# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEPHEN SIEBER, et al., | |
|      Plaintiff, | |
| v. | Case No.:   24-CV-03247 (ACR) |
| DISTRICT OF COLUMBIA, et al., | |
|      Defendants. | |

## DEFENDANT KENNETH VOGEL'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

COMES NOW the Defendant, Kenneth Vogel, by and through his attorneys, Budow and Noble, P.C., Anne K. Howard, Esquire, Walter E. Gillcrist, Jr., Esquire, and David L. DeWitt, Jr., Esquire, and moves to dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 12(b)(6), and Fed. R. Civ. P. 41(b), or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56:

## I.    BACKGROUND

### A.  Factual Allegations

Plaintiffs, Stephen Sieber and Derrick Sieber (collectively, "the Plaintiffs"), bring this apparent § 1983 suit against numerous defendants,[1] including Kenneth Vogel. The Plaintiffs owned and/or operated Precision Contracting Solutions ("PCS"), a licensed D.C. remodeling contractor. *First Amended Compl.* ("*FAC*") at ¶¶1-2. Kenneth Vogel is an attorney. *Id*. at ¶22. The Complaint details a saga which starts with purported defamation occurring in 2019 and ending

---

[1] The Defendants are: (1) The District of Columbia, (2) Karl Racine, (3) Brian Schwalb, (4) Timothy Shirey, (5) Jennifer Jones, (6) Adam Teitelbaum, (7) Kevin Vermillion, (8) Lindsay Marks, (9) Margaret Rule, (10) Kevin Spencer, (11) Thomas Hedgepeth, (12) Judge Juliet J. McKenna, (13) Judge Todd E. Edelman, (14) Judge Anita M. Josey-Herring, (15) Judge Milton C. Lee, Jr., (16) American University, (17) Natalie Delgadillo, (18) ANGI, and (19) Kenneth Vogel.

with the allegedly unconstitutional acts of D.C. Superior Court Judges in litigation filed by the District against the Plaintiffs. The Complaint, which stretches nearly 450 paragraphs and 85 pages, sets forth all manner of alleged grievance against the numerous defendants. As best as Defendant Vogel can discern, the alleged wrongs asserted against him fall into five categories. For ease of reference, the salient factual allegations are set forth below under the same headings used by Plaintiffs, where appropriate:

    a) <u>"OAG OPENED ITS INVESTIGATION INTO THE PRECISION PARTIES BASED ON FALSE CLAIMS FROM D.C. LAWYER KENNETH VOGEL."</u> [2]

According to the First Amended Complaint, in October 2018 the District of Columbia Office of the Attorney General ("OAG") opened an investigation into PCS and the Plaintiffs. *Id*. at ¶36. This investigation was purportedly launched "based on knowingly false claims provided to [the OAG] by D.C. lawyer Kenneth Vogel that intentionally defamed the Precision Parties with actual malice." *Id*. at ¶38. Plaintiffs contend that Mr. Vogel presented the OAG with a Complaint filed in the Superior Court for the District of Columbia, in the matter of *Toland v. Sieber, et al*, Case No. 2016-CA-006458-B. *Id*. at ¶39. The *Toland* Complaint alleged that Plaintiffs planted fake and misleading online reviews favorable to PCS. *Id*. Aside from allegedly presenting the *Toland* Complaint to the OAG, Mr. Vogel was also allegedly "offering PCS customers legal representation by his law firm and pitching restitution for fraudulent postings to Vicky More in June 2018, Sam Preston in June of 2018, Lamar Toland in June of 2018 and Emmy Levens in March of 2019." *Id*. at ¶43.

    b) <u>"A.G. RACINE AND MR. VOGEL CONSPIRED UNDER COLOR OF LAW TO FILE A KNOWINGLY FALSE CPPA COMPLAINT AND A KNOWINGLY FALSE PRESS RELEASE IN RETALIATION."</u> [3]

---

[2] Starting on page 10 of the First Amended Complaint.

[3] Starting on page 12 of the First Amended Complaint.

Next, Plaintiffs allege that the OAG issued a press release (referred to as the "Racine Press Release" in the First Amended Complaint) on July 31, 2019, containing "voluminous knowingly false statements of fact… using false information provided to them by D.C. Lawyer Kenneth Vogel." *Id*. at ¶52.  The Complaint asserts in conclusory fashion: "Mr. Vogel conspired with OAG under color of law, to provide OAG knowingly false claims of poor PCS workmanship and fictitious consumer injury that were made up from thin air as part of a tortious conspiracy to injure the Precision Parties and to violate their constitutional rights with actual malice." *Id*. at ¶53. Plaintiffs contend that the Racine Press Release can be found on the internet and has caused "massive damages." *Id*. at ¶68.

c) <u>"A.G. RACINE AND OAG CONSPIRED WITH [AMERICAN UNIVERSITY], MS. DELGADILLO AND MR. VOGEL UNDER COLOR OF LAW ALLOWING OAG TO EDIT AND APPROVE MS. DELGADILLO'S ARTICLE PRIOR TO PUBLICATION."</u>

On July 31, 2019, the same day the Racine Press Release was issued, a news article ("the Delgadillo Article") was written by report Natalie Delgadillo and published online. *Id*. at ¶80.  This July 2019 article stated that there were two dozen lawsuits pending against PCS. *Id*. at ¶89. According to Plaintiffs, Mr. Vogel served as the source for Ms. Delgadillo. *Id*. at ¶92.  Plaintiffs claim that the Delgadillo Article was defamatory.

d) <u>"OAG, ANGI AND MR. VOGEL CONSPIRED UNDER COLOR OF LAW TO VIOLATE THE FIRST AMENDMENT COMMERCIAL SPEECH RIGHTS OF D. SIEBER BY REMOVING HIS PCS BUSINESS PROFILE PAGE AND AUTHENTIC PCS CONSUMER REVIEWS UNDER COLOR OF LAW."</u>

"Just days after the Racine Press Release and Delgadillo Article hit the internet," Mr. Vogel and other Defendants allegedly conspired to unlawfully removed the profile pages of PCS from the ANGI and Home Advisor websites. *Id*. at 116.  Those profile pages allegedly contained favorable customer reviews. *Id*.

e) <u>Other miscellaneous allegations made throughout the First Amended Complaint.</u>

Throughout the remainder of the Complaint (pp. 28-70), Plaintiffs set forth numerous grievances concerning the litigation in *District of Columbia v. Precision Contracting Solution*, LP, et al., Case No. 2019-CA-5047-B.   Some of these grievances reference Mr. Vogel in a very conclusory fashion. *See, e.g.*, ¶138 ("Judge McKenna… in pretrial hearings struck from the trial the Racine Press Release, the Delgadillo Article… as part of a tortious conspiracy involving… Mr. Vogel under color of law to violate Plaintiffs Fifth and Fourteenth Amendment rights…."); ¶143 ("Both Judges McKenna and Edelman in pretrial hearings, as part of a tortious conspiracy under color of law involving… Mr. Vogel, violated Plaintiffs Fifth and Fourteenth Amendment rights to a fair trial by quashing witness subpoenas").   Almost all of the allegedly offending occurrences happened after Mr. Vogel was dismissed with prejudice from the case in October 2020.

### B.    Legal Claims

In total, the Plaintiffs have alleged fourteen (14) causes of action, many of which are alleged against "All Defendants."[4]  Although it is not crystal clear based on the averments under the respective Counts, it appears that most or all of the claims are various alleged violations of 42 U.S. Code § 1983. The following claims have been alleged against Mr. Vogel:

Counts I through Count V alleges a violation of the First, Fifth, and Fourteenth Amendment by all Defendants based on the purported unconstitutional nature of D.C. § 28-3904, the District of Columbia Consumer Protection Procedures Act ("CPPA"), which prohibits deceptive trade practices. *Id*. at ¶¶363-394.

Counts VI and VII alleges a violation of the First, Fifth, and Fourteenth Amendments against all Defendants based on purportedly unconstitutional jury instructions and verdict sheet

---

[4] Count Twelve and Count Thirteen are not alleged against Mr. Vogel.

used in *District of Columbia v. Precision Contracting Solutions*, Case No. 2019-CA-005047-B. *Id.* at ¶¶395-398.

Count VIII alleges that the purportedly defamatory statements in the Racine Press Release constitute violations of the Fifth and Fourteenth Amendments.  Similarly, Count IX alleges that the purportedly defamatory statements in the Delgadillo Article constitute violations of the Fifth and Fourteenth Amendments.  *Id.* at ¶¶399-402.

Count IX claims (at least in the heading) that the Racine Press Release violated the Fifth and Fourteenth Amendment Rights of Plaintiffs through defamation. *Id.* at ¶¶399-402.  Count IX alleges that the Delgadillo Article similarly violated the Fifth and Fourteenth Amendment through defamation. Id. at ¶¶403-406.

Count X alleges a violation of the First Amendment Commercial Free Speech Rights of Plaintiffs based on the Racine and Delgadillo Article. *Id.* at ¶¶407-409.

Count XI alleges a violation of Plaintiffs Rights to a Fair Trial based on various pre-trial actions of D.C. Superior Court judges. *Id.* at ¶¶410-418.

Count XIV alleges a violation of the Fifth, Seventh, and Fourteenth Amendments based on a denial of Plaintiffs' due process rights, including the right to a jury trial.  In substance, this count appears to be another claim that the D.C. CPPA (D.C. Code § 28-3904) is unconstitutional.  *Id.* at ¶¶430-435.

Under the heading "Civil Conspiracy"[5] Plaintiffs allege "an ongoing tortious conspiracy under color of law that included all Defendants named in this lawsuit… to deprive Plaintiffs" of various constitutional rights. *Id.* at ¶436.  Therefore, Plaintiffs maintain, each Defendant is vicariously liable for the acts and omissions of all other defendants. *Id.*

---

[5] It is completely unclear if this is yet another cause of action as it is not numbered.

## II.    PROCEDURAL BACKGROUND

On or about July 31, 2019, this saga began with the District of Columbia's suit against Precision Contracting Solutions, LP, Derrick Sieber, and Stephen Sieber for various violations of the Consumer Protection Procedures Act. *See Attachment 1* to FAC (filed 12/9/2024).

On September 10, 2019, Derrick S. Sieber, Stephen C. Sieber, and Precision Contracting Solutions, LP ("the Precision plaintiffs") filed a lawsuit against Mr. Vogel, the District of Columbia, Angie's List, Inc., and Angi HomeServices, Inc., in the Superior Court of the District of Columbia, Case No. 19-005949. *Exhibit 1*, Complaint in Case No. 19-005949 ("PCS v. Vogel I"). In essence, the Precision plaintiffs alleged a conspiracy against the defendants which culminated in the Racine Press Release and the District's suit against them for violations of the Consumer Protection Procedures Act. That suit was removed to this Honorable Court on or about September 16, 2019, and the defendants all filed motions to dismiss.

On November 19, 2019, Judge Beryl A. Howell of this Honorable Court issued a Memorandum Opinion granting the defendants' respective Motions to Dismiss in *PCS v. Vogel I* as to all pending claims. *Exhibit 3*, Judge Howell's Opinion (*Precision Contracting Solutions, LP v. ANGI Homeservices, Inc.*, 415 F.Supp.3d 113 (D.D.C. 2019). The matter was statistically closed and no appeal was taken.

Undeterred by the loss, on March 6, 2020, Precision Contracting Solutions ("PCS"), LP, Derrick S. Sieber, and Stephen C. Sieber filed suit against (1) Home Advisor, Inc., (2) Angie's List, Inc., (3) Kenneth Vogel, (4) Karl Racine, (5) Richard Rodriguez, (6) Natalie Delgadillo, and (6) American University in the Superior Court for the District of Columbia. *Exhibit 4*, Complaint, Case No. 2020-CA-001596-B ("*PCS v. Vogel II*"). The claims and allegations made in *PCS v.*

*Vogel II*, at least as it concerned Mr. Vogel, were the same as those made in *PCS v. Vogel I*.  Mr. Vogel filed a motion to dismiss on multiple grounds.

On June 16, 2020, the Superior Court consolidated the District of Columbia's CPPA suit against the PCS parties (Case No. 2019-CA-005047-B) with *PCS v. Vogel II* (Case No. 2020-CA-001596-B). *Exhibit 5*, Judge Park's Consolidation Order.

On October 15, 2020, Judge Jason Park granted Mr. Vogel's motion to dismiss on multiple grounds as to all counts pending against Mr. Vogel. *Id. Exhibit 6*, Judge Park's Order of Dismissal (dated October 15, 2020), at p. 1.  The other *PCS v. Vogel II* defendants were dismissed as well. Therefore, the only remaining claim was the District's CPPA suit against Precision Contracting Solutions, LP, Derrick Sieber, and Stephen Sieber ("the PCS Defendants").

On March 4, 2022, Judge Jason Park granted, in part, the District's motion for summary judgment against the PCS Defendants, holding that they were liable as a matter of law for violations of the CPPA. *Exhibit 7*, Judge Edelman's December 18, 2024 Order at p. 4.

In May 2024, the matter proceeded to a jury trial concerning the scope of the PCS Defendants' CPPA liability.  The jury held the PCS Defendants liable for "several dozen" violations. *Id*. at p. 1.

On December 18, 2024, Judge Edelman issued a 43-page Order detailing the findings of the jury and the District's entitlement to various forms of relief. *See, generally, Exhibit 7*.

## III.    REQUEST FOR RELIEF

The Plaintiffs' causes of action against Kenneth Vogel are nothing more than a re-hash of old grievances.  Plaintiffs' causes of action against Kenneth Vogel have been dismissed in their entirety on two prior occasions.  First, the doctrines of *res judicata* and collateral estoppel bars this lawsuit based on *PCS v. Vogel I* and *PCS v. Vogel II*. Secondly, as the First Amended Complaint

alleges conduct solely occurring in mid-2019, these claims are barred by the statute of limitations. Third, Plaintiffs have failed to state a claim against Mr. Vogel. Fourth, the First Amended Complaint should be deemed an impermissible "shotgun pleading." Fifth, and finally, one or more abstention doctrines are applicable to this lawsuit given the nature of the claims and the procedural backdrop.

## IV.     STATEMENT OF FACTS NOT IN DISPUTE

(SEPARATE ATTACHMENT PER COURT STANDING ORDER AND RULES)

## V.      LEGAL STANDARDS

i.     <u>Motion to Dismiss pursuant to Rule 12(b)(1).</u>[6]

"Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a claim must be dismissed if a district court lacks subject-matter jurisdiction to entertain the claim." *Schmidt v. U.S. Capitol Police, Bd.,* 826 F.Supp.2d 59, 64 (D.D.C. 2011).  "In deciding a motion to dismiss challenging the Court's subject-matter jurisdiction under Rule 12(b)(1), a court must accept as true all of the

---

[6] Defendant Vogel is moving for the dismissal of this case on multiple grounds, including various abstention doctrines.

"When it comes to motions requesting abstention under one or more of the various abstention doctrines recognized by the Supreme Court, courts have disagreed on what standard to apply – Rule 12(b)(1), Rule 12(b)(6), or neither." *Trump for President, Inc., v. Boockvar,* 481 F.Supp.3d 476, 487 (W.D. Pa. 2020); *see Nadzhafaliyev v. Hardy,* 403 F.Supp.3d 663, 667 (N.D. Ill. 2019) ("A motion to dismiss on abstention grounds does not fit neatly into Rule 12(b)(1) or 12(b)(6) but when such a motion asks the Court to decline jurisdiction, as defendants' motion does, it fits more comfortably under Rule 12(b)(1).") *Pike Company, Inc. v. Universal Concrete Products, Inc.*, 284 F.Supp.3d 376, 384 (W.D.N.Y. 2018) ("A motion to dismiss on *Colorado River* is considered as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure."); *Christian Action Network v. Maine,* 679 F.Supp.2d 140, 143 n.2 (D. Me. 2010) ("Because abstention is involved, I do not consider myself limited to the facts that the plaintiff pleaded to determine whether comity and federalism counsel against my exercise of jurisdiction, and I do not rely upon the pleading or burden requirements of either 12(b)(1) or Rule 12(b)(6)."); *Parker v. Judicial Inquiry Commission of the State of Alabama,* 212 F.Supp.3d 1171, 1174 & n.1 (M.D. Ala. 2016) (considering a *Younger* abstention under Rule 12(b)(1)); *Wells Fargo Bank, N.A. v. Carnell,* No. 16-130, 2017 WL 1498087, at *3 (W.D. Pa. Apr. 25, 2017) (applying the 12(b)(6) standard to a *Younger* Abstention).  It does not appear that this Circuit has clearly decided whether an abstention motion should be decided pursuant to 12(b)(1), 12(b)(6), or some other standard.

factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff, but courts are required to accept inferences unsupported by the facts or legal conclusions that are cast as factual allegations[.]" *Id*. (citations and internal quotations marks).  "Further, the court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case." *Id*.   "Ultimately, the plaintiff bears the burden of establishing the Court's jurisdiction, and where subject-matter jurisdiction does not exist, the court cannot proceed at all in any cause." *Id*.   "Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Grell v. Trump*, 330 F.Supp.3d 311, 316 (D.D.C. 2018).

      ii.    <u>Motion to Dismiss pursuant to Rule 12(b)(6).</u>

"In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must plead facts that, if accepted as true, state a plausible claim to relief." *Id*.   "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.   "Courts evaluating a motion to dismiss must accept as true all of the complaint's factual allegations but need not do so for bare legal conclusions." *Id*. "Nevertheless, a court need not accept inferences drawn by a plaintiff that are unsupported by facts alleged in the complaint, nor must the court accept a plaintiff's legal conclusions." *Id*.   "Finally, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it is not shown – that the pleader is entitled to relief." *T.M. v. District of Columbia*, F.Supp.2d 169, 174 (D.D.C. 2013) (citation and internal quotations omitted).  Indeed, "the complaint must be sufficient to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests[.]" *Id*.

      iii.    <u>Motion for Summary Judgment pursuant to Rule 56.</u>

"Summary judgment is appropriate where 'the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Independent Settlement Services, LLC v. Lewis*, 296 F.Supp.3d 194, 196 (D.D.C. 2018). "The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a 'material' fact." *Id.* (citation omitted). "Hence, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* (internal citations and brackets omitted). "Summary judgment may not be avoided based on just any disagreement as to the relevant facts; the dispute must be genuine, meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant." *Id.* (internal quotations and citation omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support that assertion by" either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits,… or other materials" or "showing that the materials cited do not establish the absence of presence of a genuine dispute…." Fed. R. Civ. P. 56(c)(1). "Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute." *Independent Settlement Services*, 296 F.Supp.3d at 196-97. "Thus, a nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts, and if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations and internal brackets omitted).

iv.    <u>Motion to Dismiss Pursuant to Rules 8 and 41(b)</u>

"Federal Rule of Civil Procedure 8(a) sets out a minimum standard for the sufficiency of complaints…." *T.M. v. District of Columbia*, F.Supp.2d 169, 173 (D.D.C. 2013) (citation and internal brackets omitted). Rule 8(a) requires the Complaint to contain "(1) a short and plain

statement of the grounds for the court's jurisdiction [and] (2) a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  Rule 8(d) requires that the allegations within a pleading are "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).  "Taken together, [these provisions] underscore the emphasis placed on clarity and brevity by the federal pleading rules." *Ciralsky v. C.I.A.,* 355 F.3d 661, 669 (D.C. Cir. 2004) (internal quotation marks and citations omitted).

Rule 8 "is intended to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable." *Id*. at 173-74 (internal citations omitted).  "It also serves to sharpen the issues to be litigated and to confine discovery and the presentation of evidence at trial within reasonable bounds." *Id*. at 174.  "[A] complaint that is excessively long, rambling, disjointed, incoherent, or full of irrelevant and confusing material does not meet the Rule's liberal pleading requirement." *Id*.  Enforcing Rule 8 "is largely a matter for the trial court's discretion[.]" *Ciralsky,* 355 F.3d at 669.  So-called "[s]hotgun pleadings are flatly forbidden by the spirit, if not the letter, of these rules because they are calculated to confuse the enemy, and the court, so that theories for relief not provided by law and which an prejudice an opponent's case, especially before the jury, can be masked." *Vujin v. Galbut*, 836 Fed.Appx. 809, 814 (11th Cir. 2020).

"Rule 41(b) authorizes the court to dismiss a claim or an action because of the plaintiff's failure to comply with the Federal Rules or any order of the court[.]" *Ciralsky,* 355 F.3d at 669 (internal citations omitted); *Jiggets v. District of Columbia*, 319 F.R.D. 408, 413 (D.D.C. 2017) ("And if a complaint fails to comport with the standards of Rule 8, the court may dismiss the

pleading or action."). "*Pro se* litigants are subject to the Rule 8 requirements." *Mills v. American University*, No. 22-1001 (CKK), 2022 WL 17719576, at *4 (D.D.C. Dec. 15, 2022).

## VI.    LEGAL ARGUMENT

### 1.    <u>This action against Mr. Vogel is barred by res judicata or, alternatively, collateral estoppel.</u>

#### a.    <u>Res Judicata</u>

"Also known as claim preclusion, the doctrine of *res judicata* holds that a judgment on the merits in a prior suit bars a second suit involving identical parties or their privies based on the same cause of action." *Apotex, Inc., v. Food & Drug Admin.*, 393 F.3d 210, 217 (D.C. Cir. 2004) (citation omitted). In addition to barring claims that have already been raised, *res judicata* also bars claims that "could have been raised" in the first lawsuit. *Drake v. F.A.A.*, 291 F.3d 59, 66 (D.C. Cir. 2002). "Res judicata plays a central role in advancing the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions." *Apotex, Inc.,* 393 F.3d at 217 (citations and internal quotations omitted). As the D.C. Circuit Court explained: "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id*. (citation omitted).

"Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'" *Id*. (citation omitted). "In pursuing this inquiry, the court will consider whether the facts are related in time, space, origin, motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id*. (citation and internal quotation marks omitted).

12

The case *sub judice* is barred by *res judicata* two times over. As the First Amended Complaint maintains, Mr. Vogel provided false information to the OAG about fake reviews about PCS, which purportedly caused OAG to initiate a fraud investigation. *FAC* at ¶¶38-92. This investigation culminated in the allegedly defamatory Racine Press Release and Delgadillo Article. *Id*. The complaint in *Precision Contracting Solutions, LP v. Kenneth Vogel I* concerned this exact subject matter. *See* ¶4 of the Statement of Undisputed Facts, *supra*, citing *Exhibit 1*. On November 19, 2019, 2019, Judge Howell dismissed that case, which constituted an adjudication on the merits. *See Rollins v. Wackenhut Servs.*, 703 F.3d 122, 132 (D.C. Cir. 2012) (Kavanaugh, J., concurring) ("A district court order that dismisses a case under Rule 12(b)(6) without stating whether it is with or without prejudice operates as a dismissal with prejudice. In this case, the District Court's dismissal order did not state whether it was with or without prejudice. Under Rule 41(b), we thus must construe the order as a dismissal with prejudice.").

In *Precision Contracting Solutions, LP v. Kenneth Vogel II*, similar allegations were made once again. *See* ¶11 of the Statement of Undisputed Facts, *supra*, citing *Exhibit 4*. On October 15, 2020, Judge Jason Park dismissed the matter on multiple grounds, including *res judicata*, reasoning:

> The claims in the Precision complaint against Mr. Vogel are barred by the doctrine of res judicata based on Chief Judge Howell's ruling in the earlier filed federal lawsuit by the Precision parties. *See Precision Contr. Sols., LP v. ANGI Homeservices, Inc.*, 415 F. Supp. 3d 113, 116 (D.D.C. 2019). The claims against Mr. Vogel share the same subject matter and a common nucleus of facts with the previously dismissed federal lawsuit, which included allegations that Mr. Vogel tortiously interfered with the Precision parties' business relationships, conspired with OAG and others to harm Precision's business reputation, and transmitted false allegations about Precision to OAG. *See generally Compl., Precision Contr. Sols., LP v. ANGI Homeservices, Inc.*, 415 F. Supp. 3d 113 (D.D.C. 2019). In the federal complaint, the Precision parties alleged that "Defendant Vogel transmitted materials about PCS to counsel in another proceeding in violation of a confidential settlement agreement that had been approved by Judge Mott and prohibited distribution of all such materials to anyone not a party to the agreement." *Id*. ¶123.

> The federal complaint further alleged that Mr. Vogel repeated the allegations raised in the Toland matter to OAG, triggering the fraud investigation. *Id*. ¶124.

*Exhibit 5* at pp. 9-10.  Plaintiffs have now filed a lawsuit based on the same common nucleus of facts for a third time.  Accordingly, the case should be dismissed with prejudice based on *res judicata*.

> b.  <u>Collateral Estoppel</u>

"Collateral estoppel bars the relitigation of issues previously tried and decided in a court of competent jurisdiction involving the same or in some circumstances different parties." *Lopez v. Huff*, 508 F.Supp.2d 71, 76 (D.D.C. 2007) (citing *Ashe v. Swenson*, 397 U.S. 436, 443-44 (1970) (collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.")).  "In order for collateral estoppel to apply, a defendant must show: (1) the actual litigation of the issue that is, contested by the parties and submitted for determination by the court, (2) the determination of the issue by a court of competent jurisdiction, and (3) the lack of unfairness in precluding the issue from the subsequent." *Lopez*, 508 F.Supp.2d at 76.  For the reasons set forth in the previous section, Defendant Vogel maintains that collateral estoppel similarly bars this lawsuit.

> **2.  <u>All of Plaintiffs' well-plead claims against Mr. Vogel are barred by the applicable three-year statute of limitation.</u>**

"The United States Supreme Court has determined that the appropriate statute of limitations for a claim brought under section 1983 is that which the State provides for personal injury torts." *Earle v. District of Columbia*, 707 F.3d 299, 305 (D.C. Cir. 2012) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)).  "[W]here state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual

statute for personal injury actions." *Id.* (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). "The District has two statutes of limitations applicable to tort claims: a one-year statute governing enumerated intentional torts, D.C. Code § 12-301(4), and a three-year residual statute covering all other tort actions [, 12-301(8)]." *Id.* Therefore, this Circuit applies "the three-year residual statute of limitations to a section 1983 claim." *Id.* (citing *Singletary v. District of Columbia*, 351 F.3d 519, 529 n.11 (D.C. Cir. 2003)); *see Cobb v. California*, No. 24-1878 (UNA), 2024 WL 3551885, at *1 (D.D.C. July 18, 2024) (applying three-year statute of limitation to §1983 claim brought for alleged violation of First Amendment).

"A section 1983 claim accrues when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief. *Id.* (citation omitted); *see Munoz v. Bd. of Trs. of Univ. of Dist. of Columbia*, 427 Fed.Appx. 1, 4 (D.C. Cir. 2011) (per curiam) (section 1983 claim accrues when wrongful conduct occurs). All of the allegedly improper conduct by Mr. Vogel occurred in 2019, at the latest. The Racine Press Release was published on July 31, 2019. FAC at ¶52. On that same day, the Delgadillo Article was published. *Id.* at ¶80. According to the First Amended Complaint, "just days" after the publication of the Racine Press Release and the Delgadillo Article, Mr. Vogel allegedly conspired with other defendants to remove the profile pages of PCS from the ANGI and Home Advisor websites. *Id.* at ¶116.

As the subject lawsuit was filed on November 18, 2024, these claims are all barred by the applicable three-year statute of limitations, which would have run on November 18, 2021. There can be no credible contention that the discovery rule is applicable to this case either. Indeed, the Racine Press Release was a topic of *PCS v. Vogel I*, which was filed on September 10, 2019. *See, e.g.*, Statement of Undisputed Facts, *supra*, at ¶4. Likewise, the Delgadillo Article was explicitly mentioned in *PCS v. Vogel II*, which was filed on March 6, 2020. *Exhibit 4* at ¶116. Accordingly,

all claims against Mr. Vogel should be dismissed with prejudice as barred by the statute of limitations.

### 3. __Plaintiffs have failed to state a claim against Mr. Vogel.__

As previously mentioned, it is somewhat unclear to Defendant Vogel whether or not each cause of action is a § 1983 claim. Nonetheless, "[i]f a claim brought under 42 U.S.C. § 1983 does not state a constitutional claim, it is subject to dismissal under Rule 12(b)(6)…." *John Doe v. Metropolitan Police Dep't of Dist. of Columbia*, 445 F.3d 460, 467 (D.C. Cir. 2006); *Citizens for Responsibility and Ethics in Washington v. Trump*, 302 F.Supp.3d 127, 132 (D.D.C. 2018) ("[W]hen a plaintiff fails to state a valid cause of action, the proper remedy is to dismiss the complaint under Rule 12(b)(6) for failure to state a claim[.]"). To state a claim under § 1983 for a violation of one's constitutional protections, a complaint must allege facts sufficient to support a reasonable inference that (1) a person (2) acting under color of state, territorial, or District of Columbia law (3) subjected the plaintiff or caused the plaintiff to be subjected (4) to the deprivation of a right secured by the Constitution or laws of the United States. *Jones v. Delaney*, 610 F.Supp.2d 46, 49 (D.D.C. 2009). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation omitted).

First and foremost, none of the counts explicitly identify which clause of the applicable amendment(s) undergirds the §1983 claim. For example, there are multiple rights secured by the First Amendment, concerning free speech, religion, and the right to assembly. Seeking to recover under the First Amendment (or any other amendment, as the case may be) is insufficiently precise to state a claim.

Secondly, much of the First Amendment Complaint seeks to hold Mr. Vogel liable based on a purported conspiracy between himself, the OAG, and other defendants. "Conspiracy allegations must be specific, as bald speculation or a conclusory statement that individuals are co-conspirators is insufficient to establish a claim for a conspiracy." Harvey v. Kasco, 109 F.Supp.3d 173, 178 (D.D.C. 2015). It is alleged that Mr. Vogel reported information to the OAG. This, of course, is an eminently reasonable course of action when a citizen suspects wrongdoing. Judge Howell's criticism of the Complaint in *PCS v. Vogel I* is similarly applicable here: "allegations that a defendant acted in ways consistent with a conspiratorial agreement, but also equally well explained by legitimate… motives, do not suffice… to show illegality." *Precision Contracting Solutions, LP v. ANGI Homservices, Inc.*, 415 F.Supp.3d 113, 127 (D.D.C. 2019) (internal brackets omitted). As the entirety of the First Amended Complaint is based on intimations of conspiracy without any particularity, there is no claim stated.

In Count I, Plaintiffs seek declaratory judgment from the Federal Court that the language of DC Code §28-3904 is unconstitutional at its face.  Respectfully, Plaintiffs have no causes of action against Defendant Vogel for asserting that DC Code §28-3904 is constitutional on its face.

As to Count II, set forth at ¶ 370-376, pg. 71-72 of Plaintiffs' First Amended Complaint, Plaintiffs again allege that all Defendants have violated Plaintiffs First, Fourth, and Fifteenth Amendment rights in that DC Code §28-3904(e) is unconstitutional at its face.  Again, Plaintiffs here seek a declaratory judgment from the Court that DC Code §28-3904(e) is unconstitutional at its face.  Plaintiffs allege that Defendants, at all times, were acting in and conspired to act under the color of DC State Law, and go on to challenge the proprietary appropriateness of the provisions in DC Code §28-3904(e).  Again, respectfully, Defendant Vogel, a private citizen, that played no

role in enacting this code provision or serving in any way to enforce this provision, is not liable to the Plaintiffs for the provisions of this statute and, therefore, should not be a party to Claim No. 2.

As to Count III, set forth at ¶ 377-382, pg. 72-73 of Plaintiffs' First Amended Complaint, Plaintiffs again allege that all Defendants have violated Plaintiffs First, Fourth, and Fifteenth Amendment rights in that DC Code §28-3904(f) is unconstitutional at its face. Again, Plaintiffs here seek a declaratory judgment from the Court that DC Code §28-3904(f) is unconstitutional at its face. Plaintiffs allege that Defendants, at all times, were acting in and conspired to act under the color of DC State Law, and go on to challenge the proprietary appropriateness of the provisions in DC Code §28-3904(f). Again, respectfully, Defendant Vogel, a private citizen, that played no role in enacting this code provision or serving in any way to enforce this provision, is not liable to the Plaintiffs for the provisions of this statute and, therefore, should not be a party to Claim No. 3.

As to Count IV, set forth at ¶ 383-388, pg. 73-74 of Plaintiffs' First Amended Complaint, Plaintiffs again allege that all Defendants have violated Plaintiffs First, Fourth, and Fifteenth Amendment rights in that DC Code §28-3904(f-1) is unconstitutional at its face. Again, Plaintiffs here seek a declaratory judgment from the Court that DC Code §28-3904(f-1) is unconstitutional at its face. Plaintiffs allege that Defendants, at all times, were acting in and conspired to act under the color of DC State Law, and go on to challenge the proprietary appropriateness of the provisions in DC Code §28-3904(f-1). Again, respectfully, Defendant Vogel, a private citizen, that played no role in enacting this code provision or serving in any way to enforce this provision, is not liable to the Plaintiffs for the provisions of this statute and, therefore, should not be a party to Claim No. 4.

As to Count V, set forth at ¶ 389-394, pg. 74-75 of Plaintiffs' First Amended Complaint, Plaintiffs again allege that all Defendants have violated Plaintiffs First, Fourth, and Fifteenth Amendment rights in that DC Code §28-3904(m) is unconstitutional at its face. Again, Plaintiffs

here seek a declaratory judgment from the Court that DC Code §28-3904(m) is unconstitutional at its face.  Plaintiffs allege that Defendants, at all times, were acting in and conspired to act under the color of DC State Law, and go on to challenge the proprietary appropriateness of the provisions in DC Code §28-3904(m).  Again, respectfully, Defendant Vogel, a private citizen, that played no role in enacting this code provision or serving in any way to enforce this provision, is not liable to the Plaintiffs for the provisions of this statute and, therefore, should not be a party to Claim No. 5.

As to Count VI, Plaintiffs allege that all Defendants are liable to them because the Jury Instructions in a trial, which Defendant Vogel was not a party to, were unconstitutional.  Defendant Vogel did not submit Jury Instructions to the Court. Defendant Vogel did not argue the appropriateness of the District of Columbia's requested Jury Instructions or the Defendants in the enforcement actions instructions, nor did Defendant Vogel have any voice or make any rulings regarding these Jury Instructions.  Simply put, he is not responsible to the Plaintiffs for the Jury Instructions.

As to Count VII, Plaintiffs challenge the Verdict Sheet. Again, Defendant Vogel had no role in this as Defendant Vogel was not a party.

As for Count VIII and IX, Plaintiffs allege that the Racine Press Release and Delgadillo Article violated multiple constitutional rights. Of note, there is no allegation that Mr. Vogel wrote or published the press release or the article. Further, to the extent Mr. Vogel ever had contact with the OAG or Ms. Delgadillo regarding the wrongdoing of PCS and the Siebers, this is not action under the color of state law. *Canadian Transport Co. v. U.S.* 663, F.2d 1081, 1093 (D.C. Cir. 1980) ("[P]rivate citizens, acting in their private capacities, cannot be guilty of violating due process rights. The Fifth Amendment is a restraint on the federal government, not on private citizens.") ; *Jones*, 610 F.Supp.2d at 52.

As for Count X, which allegations that the Press Release and Article violated Plaintiffs "Commercial Free Speech Rights," Mr. Vogel's actions as a private citizen are not sufficient to state a § 1983 claim.

Count XI, which concerns pre-trial actions taken by D.C. Superior Court Judges, have absolutely nothing to do with Mr. Vogel. He was a party defendant who was dismissed with prejudice from the case in October 2020.

Count XIV challenges the constitutionality of provisions of the CPPA. Again, this obviously has nothing to do with Mr. Vogel.

Accordingly, for all these reasons, all counts pending against Mr. Vogel should be dismissed with prejudice.

**4. Plaintiffs' First Amended Complaint is an impermissible "Shotgun Pleading" that fails to comply with Rule 8 and therefore should be dismissed.**

Pleadings which fail to comply with Rule 8 have sometimes been referred to as "shotgun pleadings." *Jiggets*, supra, 319 F.R.D. at 417. "The essence of a shotgun pleading is that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Vujin v. Galbut*, 836 Fed.Appx. 809, 814 (11th Cir. 2020). The 11th Circuit has distilled four different ways that a complaint could be considered an impermissible "shotgun pleading":

First: complaints that contain multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.

Second: complaints that are replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.

Third: complaints that do not separate each cause of action or claim for relief into separate counts.

Fourth: complaints that assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Id*. at 815 (internal citations and quotation marks omitted).  A fifth manifestation of the "shotgun pleading" that courts have recognized is that "[l]ength may make a complaint unintelligible, by scattering and concealing in a morass of irrelevancies the few allegations that matter." *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378-79 (7th Cir. 2003); *see Brown v. Dalton*, No. 96-5285, 1997 WL 362505, at *1 (D.C. Cir. May 5, 1997) (noting that when a complaint "contains numerous unnecessary averments and is so lengthy and confusing[,]" the defendant "cannot be expected to formulate a response that would apprise [the plaintiff] of the allegations in the complaint that stand admitted and will not be in issue at trial and those that are contested and will require proof to be established" (internal quotation marks and citations omitted)).

Starting with the last variation of the shotgun pleading, at 85 pages and 436 paragraphs, the First Amended Complaint is as long or longer than others that courts in this Circuit have dismissed.  *See, e.g.*, *Terrell v. Mr. Cooper Grp., Inc.*, No. 20-0495 (CKK), 2020 WL 4673420, at *3 (D.D.C. Aug. 12, 2020) (finding pro se plaintiff's 90-page, 339-paragraph amended complaint to violate Rule 8); *Unfoldment, Inc. v. Dist. of Columbia*, No. 07-01717 (HHK), 2007 WL 3125236, at *1-2 (D.D.C. Oct. 24, 2007) (dismissing 61-page, 368 paragraph complaint for violating Rule 8).  As then-Judge Ketanji Brown Jackson recognized concerning impermissibly lengthy complaints, "even if the counts… actually state a claim upon which relief can be granted, why should the court be obliged to try to navigate through these papers in order to make that determination?" *Jiggetts*, 319 F.R.D. at 418.  In that matter, Judge Jackson dismissed a complaint which was 78 pages long with 450 paragraphs. *Id*. at 410.

The Plaintiffs claim is a shotgun pleading of the third variety as well because many of the counts seek relief under various provisions of the Constitution. *Vujin*, 836 Fed.Appx. at 816-17 (Recognizing that the complaint "is also a shotgun pleading… because each count contains

multiple causes of action. Count One alleges § 1983 violations of Vujin's rights under the First

Amendment, the Due Process Clause, and Vujin's 'Civil Rights' generally."); *Jiggets*, 319 F.R.D.

at 417 ("The fact that there are multiple legal theories smooshed into each of the counts merely

muddles matters, and thereby exacerbates the lack-of-clarity problem.").[7]  Plaintiffs seek relief

under multiple constitutional amendments in most counts.  Count I, II, III, IV, V, VI, and VII each

allege a § 1983 claim under the First, Fifth, and Fourteenth Amendments. Count VIII, IX, and XI

each allege a § 1983 claim under the Fifth and Fourteenth Amendments.  Finally, Count XIV

alleges a § 1983 claim under the Fifth, Seventh, and Fourteenth Amendments.[8]

Finally, the First Amended Complaint also includes incorporation clauses throughout,

which adopt over 360 paragraphs of factual allegations into each count. S*ee Jiggets*, 319 F.R.D. at

416 (dismissing as a shotgun pleading, in part, because "[e]ach of the 20 counts generally

'incorporates by reference' every paragraph before it, and most counts fail to give any indication

---

[7] In the case of *Farr v. Daling*, 684 F.Supp.3d 1322, 1334 (N.D. Ga. 2023), the District Court dismissed a § 1983 claim as a shotgun pleading where the Plaintiffs pled § 1983 liability under three constitutional provisions in one count.  Specifically, Plaintiffs pled:

> Defendants actions as described above, including but not limited to forcing Plaintiffs to remove their advertisements of 725 Mountain View from rental websites, unlawfully restricting Plaintiffs ability to lawfully rent their property located at 725 Mountain View, threatening to issue citations and fines for non-compliance, misapplying and/or misinterpreting the ULDC, arbitrarily applying the ULDC, and not treating similar situated individuals in the same manner (1) deprived Plaintiffs of their 14th Amendment Constitutional rights and constitutes deprivation of property without due process of law, U.S. Const. amend. 14; (2) deprived Plaintiffs of their 14th Amendment rights of equal protection under the law, U.S. Const. amend. 14; and/or (3) deprived Plaintiffs of their First Amendment constitutional rights to freedom of speech. U.S. Const. amend. 1, Defendants actions were not rationally related to a legitimate state interest.

[8] Indeed, the only count pending against Mr. Vogel which is immune from this specific criticism might be Count X, which would appear to allege a § 1983 claim based on a violation of Plaintiffs First Amendment "Commercial Free Speech Rights."  Nonetheless, this cause of action is subject to the other "shotgun pleading" criticisms elucidated herein.

of the particular allegations that correspond to the legal theories and claims that are alleged in the count at issue."). Accordingly, all counts should be dismissed as First Amended Complaint constitutes an impermissible shotgun pleading.

5. **One or more abstention doctrines is applicable to this suit.**

    a. Pullman Abstention

A *Pullman* abstention dictates that "when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question." *Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 83 (1975) (citing *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941)); *see JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1124 (D.C. Cir. 2004) (recognizing that "this circuit has treated the District of Columbia courts as state courts in the application" of the *Pullman* abstention and the *Colorado River* abstention).

The case *sub judice* is very similar to the case of *Justice v. Superior Court, Dist. of Columbia*, 732 F.2d 949, 950 (D.C. Cir. 1984). As the Court of Appeals held:

> Appellants brought this action in federal district court against the Superior Court of the District of Columbia and two of its judges. Appellants allege that the conservatorship statute of the District of Columbia is unconstitutional on its face and as applied….

> While appellants have been before the Superior Courts for the District of Columbia for a number of years, they have not pursued an appeal to the District of Columbia Court of Appeals, which thus has never had an opportunity to rule upon appellants' claims. In my opinion, those claims must be presented to the District of Columbia Court of Appeals before a federal district court can process this cause of action.

> This case falls squarely within the scope of the *Pullman* abstention doctrine. So long as the as-yet-unconstrued conservatorship statute is susceptible of a saving construction, the district court should abstain from entertaining appellants' constitutional claims.

*Id*. (internal citations omitted).

As the Supreme Court reasoned, "[t]he reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court." *Pullman*, 312 U.S. at 500.  Therefore, "[t]he resources of equity are equal to an adjustment that will avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication." *Id*.

A *Pullman* abstention would be particularly applicable to Counts I through V, and XIV, which challenge the constitutionality of various components of the D.C. Consumer Protection Procedures Act (§ 28-3904).  The Superior Court entered its judgment against the Precision parties in Case No. 2019-CA-005047-B on December 18, 2024. *See Exhibit 7*.  The Plaintiffs have an opportunity to appeal the case to the District of Columbia Court of Appeals and raise any preserved constitutional challenges to § 28-3904.  Therefore, the *Pullman* abstention doctrine is applicable to those claims and they should be dismissed from this suit.

b.  Rooker-Feldman Abstention

Under the *Rooker-Feldman* doctrine, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994) (citation omitted); *see District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) ("a United States District Court has no authority to review final judgments of a state court in judicial proceedings.").  "Pursuant to this doctrine, federal district courts do not have the authority to review final judgments of a state court in judicial proceedings, or to decide federal constitutional claims that are so inextricably intertwined with a state court decision that the district court is in essence being called upon to review the state-court decision[.]" *Laverpool v. Taylor Bean & Whitaker Reo LLC*, 229 F.Supp.3d

5, 16 (D.D.C. 2017) (internal citation omitted).  "The *Rooker-Feldman* doctrine is based on the jurisdictional grant codified in 28 U.S.C. § 1257, which authorizes only the Supreme Court to exercise appellate jurisdiction over state court judgments." *Id*.  "The *Rooker-Feldman* doctrine prevents lower federal courts from hearing cases that amount to the functional equivalent of an appeal from a state court." *Gray v. Poole*, 275 F.3d 1113, 1119 (D.C. Cir. 2002); *see Richardson v. District of Columbia Court of Appeals*, 83 F.3d 1513, 1514 (D.C. Cir. 1996).

A *Rooker-Feldman* abstention appears to be clearly applicable to Counts VI and VII, which allege constitutional violations based on the jury instructions and verdict sheet used in *District of Columbia v. Precision Contracting Solutions*, Case No. 2019-CA-005047-B.  Additionally, the abstention would be applicable to Count XI, which alleges various constitutional violations based on pre-trial rulings of D.C. Superior Court judges in the same case.  Because this Court does not have appellate authority to review those decisions, those claims should be dismissed with prejudice.

c.  Colorado River Abstention

As the Supreme Court explained in *Colorado River*, "[g]enerally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).  "Accordingly, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding must be exceptional." *Edge Investment, LLC v. District of Columbia*, 927 F.3d 549, 552 (2019).  A "Colorado River abstention is not based upon considerations of proper constitutional adjudication and regard for federal-state relations, but on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Sheehan*

*v. Koonz*, 102 F.Supp.2d 1, 3 (D.D.C. 1999).  Some of the factors relevant to whether a case represents the kind of exceptional circumstances warranting deference to the state court proceedings include: "(1) whether one court has first assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of the law that will provide the rules of the decision; and (6) the adequacy of the state court proceedings to protect the rights of the parties." *Sheehan*, 102 F.Supp.2d at 3.

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Id*. at 4.  Under the following facts, one federal court held that the progression of the state court action as compared with the federal action "weigh[ed] heavily in favor of abstention":

> The state court obtained jurisdiction more than two years before this case was filed in federal court.  After conducting extensive discovery, the… defendants filed a motion for summary judgment and obtained a judgment of dismissal on limitations grounds. That decision is currently on appeal.  By contrast, the instant case has been pending for just six months and has not advanced beyond the initial pleading stage.

*Melo v. Gardere Wynne Sewell*, No. 3-04-CV-2238-CB, 2005 WL 991600 (N.D. Tex. Apr. 21, 2005) (citing *Board of Education of Valley View Community Unit School Dist. No. 365U v. Bosworth*, 713 F.2d 1316, 1321-22 (7th Cir. 1983) (reasons for *Colorado River* abstention are stronger when a parallel state court action is on appeal)).  As the *Melo* Court concluded:

> After carefully balancing the relevant factors, the court determines that "exceptional circumstances" warrant staying this litigation in favor of the pending state court proceeding.  The disposition of the limitations issue now on appeal, while not res judicata in the instant case, may well inform the court's decision regarding a threshold affirmative defense raised by defendants.  It simply makes no sense to proceed with the federal action until the limitations issue, which is common to both cases, is resolved.  Moreover, if the state court judgment is reversed, defendants will be forced to defend virtually identical class actions in two different forums. That would waste the time and resources of the courts, attorneys, and litigants.

*Melo*, 2005 WL 991600, at *3; *see Shermohmad v. New York Life Ins. Co.*, No. 05-6072, 2006 WL 2513398, at *4 (E.D. La. Aug. 25, 2006) (staying case pursuant to Colorado River because parallel state court action was filed by the plaintiff three years before, discovery had already occurred, and state court granted the Defendants' motions for summary judgment dismissing plaintiff's claims); *Alvarado v. U.S. Bank Nat'l Ass'n*, No. 15 CV 07111, 2016 WL 3964051, at *5 (N.D. Ill. July 21, 2016) (holding that a *Colorado River* abstention was favored where the state court had granted summary judgment).

As established, the allegations against Mr. Vogel arise from the same nucleus of facts alleged in *PCS v. Vogel II*. On October 15, 2020, Judge Jason Park granted Mr. Vogel's motion to dismiss on various grounds and dismissed all claims against him with prejudice. The consolidated case proceeded based on the remaining claims the District of Columbia had against PCS, Derrick Sieber, and Stephen Sieber. A jury trial was held in May 2024, which resulted in PCS, Derrick Sieber, and Stephen Sieber being held liable for numerous CPPA violations. On December 18, 2024, Judge Edelman issued his ruling as it concerned the relief awarded to the District of Columbia as a result of that jury trial. It is fully expected that PCS and the Siebers will file an appeal as to the entirety of that case shortly.[9] In total, the consolidated Superior Court case, which includes *PCS v. Vogel II,* has been ongoing for nearly five years. Based on the authorities cited above, proceeding with the case *sub judice* would be a waste of this Court's time, not to mention the defendants. Therefore, this Court should hold that a *Colorado River* abstention is applicable to the entirety of this case. Dismissal without prejudice is an appropriate remedy when a Court finds a *Colorado River* abstention to be appropriate. *Sheehan*, 102 F.Supp.2d at 6.

---

[9] Of note, Mr. Vogel maintains that the period for any appeal of his dismissal from *PCS v. Vogel II* expired long ago. Nonetheless, Mr. Vogel expects that PCS and the Siebers will attempt to appeal his dismissal.

## VII.    CONCLUSION

Based upon the foregoing facts and legal arguments, Defendant Vogel respectfully requests that the allegations asserted against him in Plaintiffs' First Amended Complaint be dismissed <u>with</u> prejudice, or for any other relief as appropriate.

Respectfully submitted,

**BUDOW AND NOBLE, P.C.**

_____/s/ Anne K. Howard_____
Anne K. Howard, Esq., Bar No. 415690
David L. DeWitt, Jr., Esq., Bar No. 1685898
Walter E. Gillcrist, Jr., Esq., Bar No. 398328
12300 Twinbrook Parkway, Suite 540
Rockville, MD  20852
(301) 654-0896 / (301) 907-9591 (f)
ahoward@budownoble.com
ddewitt@budownoble.com
wgillcrist@budownoble.com
*Counsel for Kenneth Vogel*

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on this 31st day of December 2024, I served a true copy of Defendant Kenneth Vogel's Motion to Dismiss, or, in the alternative, Motion for Summary Judgment via Pacer and/or United State First Class Mail, postage paid, to the following:

Edward W. Lyle, Esq.
Law Office of Edward W. Lyle
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
ewlyle@west1805.com
***Attorney for Plaintiffs, Derrick Sieber***

Stephen C. Sieber
1805 45th Street NW
Washington, DC 20007
***Plaintiff, Pro Se***

Marcus Daniel Ireland, Esq.
Office of the Attorney General for The
District of Columbia
400 Sixth Street NW, Suite 10100.085
Washington, DC 20001
marcus.ireland@dc.gov
***Attorney for Defendants, District of Columbia,
Karl Racine, Brian Schwalb, Timothy Shirey,
Jennifer Jones, Adam Teitelbaum, Kevin
Vermillion, Lindsay Marks, and Margaret Ulle***

Blair L. Gilbert, Esq.
D.C. Office of the Attorney General
400 6th Street, NW
Washington, DC 20001
blair.gilbert@dc.gov
***Attorney for Defendant, Associate Judges J. McKenna, T. Edelman, Chief Judge A. Josey-Herring, Thomas Hedgepeth, and Milton Lee, Jr.***

Kevin Spencer
500 Indiana Avenue N.W
Washington D.C. 20001


Kenneth Vogel
KAVogel@MetroLegalSolutions.com


_____*/s/ Anne K. Howard*_____
Anne K. Howard, Esq., Bar No. 415690