**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **STEPHEN SIEBER, et al.,** |
| Plaintiffs, |
| v. |
| **DISTRICT OF COLUMBIA, et al.,** |
| Defendants. |

Case No. 24-cv-03247-ACR

**DEFENDANT AMERICAN UNIVERSITY AND NATALIE DELGADILLO'S
OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE
<u>SECOND AMENDED COMPLAINT</u>**

Pursuant to Federal Rule of Civil Procedure 15 and Local Civil Rule 7, Defendants

American University and Natalie Delgadillo ("AU Defendants") hereby submit this opposition to

Plaintiffs Stephen Sieber and Derrick Sieber's Motion for Leave of Court to File a Second

Amended Complaint ("Mot. for Leave") (ECF No. 27).

This frivolous lawsuit, ostensibly seeking relief under 42 U.S.C. § 1983, is Plaintiffs'

transparent effort to rescue them from nearly $4 million in adverse judgments and sanctions

issued against them and their company, Precision Contracting Solutions LP ("PCS"), in the

consolidated District of Columbia Superior Court cases, *District of Columbia v. PCS*, 2019 CA

005047 B and *Sieber v. Vogel, et al.*, 2020 CA 001596.[1]  Their lawsuit here improperly asks this

---

[1] The Superior Court awarded: $2,200,235.39 and $629,128.85 against Plaintiffs and PCS, and
$138,000 against Stephen Sieber, in restitution based on jury verdicts finding that they had
violated the D.C. Consumer Protection Procedures Act in dozens of instances; $902,608,72
against Plaintiffs and PCS in legal fees to the District of Columbia; $115,994.54 against Plaintiff
Stephen Sieber and PCS in favor of AU Defendants under the D.C. Anti-SLAPP Act, D.C. Code
§ 16-5501 *et seq.*; $46,175.01 against Plaintiff Stephen Sieber and PCS under the Anti-SLAPP
Act; and $20,804.96 to AU Defendants as sanctions against Plaintiff Stephen Sieber.  *See
generally* Ex. 1 (D.C.C.A. Opposed Mot. of Appellants to Stay Proceedings and Judgments).

Court to overrule a number of D.C. Superior Court judges' well-reasoned opinions, and a D.C. jury's decision against them, following five years of findings, verdicts, judgments, and fee awards. Moreover, Plaintiffs are also continuing to fight these orders in the D.C. court system by appealing the judgments against them and asking the Court of Appeals to stay their appeal pending resolution of this federal action. *See* Ex. 1; *see also* AU Defs.' Request for Pre-Mot. Conf. Ex. 6 (Plaintiffs and PCS's Notice of Appeal) (ECF No. 33-6). This Court should provide Plaintiffs with no opportunity to prolong their waste of the Court's precious resources and to force the parties to incur even more time and expense. For this reason, the AU Defendants oppose Plaintiffs' futile request to again amend their meritless complaint.

This is certainly not a case where "justice so requires" leave to amend. *See* Fed. R. Civ. P. 15(a)(2). Rather, this is a classic circumstance where the Court can and should deny the Motion for Leave on grounds of "undue delay, bad faith or dilatory motive on the part of the movant," and because "granting leave to amend would be futile." *Steele v. United States*, 2020 U.S. Dist. LEXIS 229629, at *12, (D.D.C. Dec. 4, 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (quotation marks omitted).

## I.      Plaintiffs Continue to Recycle Allegations

Both the operative First Amended Complaint ("FAC") and the proposed Second Amended Complaint ("SAC") allege that AU Defendants violated Plaintiffs' constitutional rights for publication of a straightforward article in 2019 for the online news site DCist, reporting on the D.C. Office of Attorney General's lawsuit against Plaintiffs and their contracting company, PCS. The Superior Court twice dismissed the Plaintiffs' defamation and conspiracy claims against AU Defendants pursuant to D.C.'s Anti-SLAPP Act, D.C. Code § 16-5501 *et seq.*, on the grounds that the article is protected by the fair report privilege and other common law and First

Amendment defenses, and awarded AU Defendants $115,994.54 in legal fees.  Additionally, in response to further harassing conduct, the Superior Court issued a protective order preventing the Plaintiffs from forcing Ms. Delgadillo and other journalists to testify in connection with the OAG's case against Plaintiffs, and sanctioned Stephen Sieber and ordered him to pay $20,804.96 in legal fees for issuing a subpoena seeking Ms. Delgadillo's trial testimony despite many warnings that this was improper.

Plaintiffs' allegations concerning AU Defendants, in the pleadings before this Court, are outright requests for the Court to overrule the Superior Court's decisions.  *E.g.*, FAC ¶ 85 (alleging statements in the DCist article were "knowingly false and designed to defame and injure Plaintiffs with actual malice under color of law as part of the tortious conspiracy to violate the constitutional rights of Plaintiffs"); SAC ¶ 104 ("The false and defamatory statements in the Delgadillo Article were made knowing they were false, with actual malice, and not protected by the First Amendment, any D.C. anti-SLAPP statute, the fair report privilege, or any other government or journalism privilege.").  Both the FAC and SAC also allege that AU Defendants conspired with the other named defendants, including OAG and Superior Court judges, to violate Plaintiffs' constitutional rights through publication of the article, as well as by moving for and obtaining orders and fee judgments in their favor.  FAC ¶¶ 148-157, 410-413, 419-426; SAC ¶¶ 80-116, 144-59, 338, 360-62, 364-65.

## II.    Further Amendment of the Complaint Would be Futile

Plaintiffs' entire premise for their claims is baseless.  In response to the operative FAC, AU Defendants have filed a Request for Pre-Motion Conference (the "Request") (ECF No. 33), requesting a hearing on their intent to file a Rule 12 motion to dismiss.  AU Defendants will ask the Court to dismiss the lawsuit with prejudice on the grounds that (1) the Court lacks subject-

matter jurisdiction to review decisions by D.C. courts; (2) the claims against AU Defendants are barred by the res judicata doctrine; (3) the statute of limitations for § 1983 claims based on AU Defendants' alleged conduct in 2019 has expired; and (4) Plaintiffs have failed to plausibly allege AU Defendants are "state actors" or acted under color of District of Columbia law within the meaning of § 1983. *See id.* Co-Defendant Kenneth Vogel, an attorney who represented an aggrieved consumer years ago and was also twice dismissed and awarded fees pursuant to the Anti-SLAPP Act in Superior Court, filed a request indicating he also would seek dismissal on similar grounds. *See* ECF No. 17. The OAG defendants and Superior Court defendants have likewise indicated they will seek dismissal through Rule 12 motions. *See* ECF Nos. 24, 25.

The proposed SAC does not – nor could it – cure the jurisdictional and pleading defects identified in AU Defendants' Request and Vogel's request. The Court should therefore deny Plaintiffs' Motion for Leave on the grounds that further amendment of the pleadings is futile. *M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002) ("A court may deny a motion to amend the complaint as futile when the proposed complaint would not survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss."); *see also James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1098 (D.C. Cir. 1996) (upholding denial of motion to amend a complaint because it would have been futile); *Steele*, 2020 U.S. Dist. LEXIS 229629, at *20 (denying motion for leave because proposed allegations "would be futile").

### III.    The Motion for Leave Was Filed in Bad Faith and with Dilatory Motive

In federal courts, "it is fairly well established that denying leave to amend is particularly appropriate when a lawsuit is on the verge of final resolution." *Hoffmann v. United States*, 266 F. Supp. 2d 27, 34 (D.D.C. 2003) (cleaned up), *aff'd*, 96 F. App'x 717 (Fed. Cir. 2004). In other words, a plaintiff cannot continue amending their pleadings simply to avoid an adverse ruling.

*Id.* (denying motion for leave that was "nothing more than an unfortunate attempt to 'muddy the waters,' to divert the court's attention from the resolution of defendants' dispositive motion"); *Local 472 of United Ass'n of Journeymen & Apprentices v. Ga. Power Co.*, 684 F.2d 721, 724–25 (11th Cir.1982) (no abuse of discretion to deny motion to amend that "appears to be nothing more than an effort to avoid an adverse summary judgment ruling"); *Lowe's Home Ctrs., Inc. v. Olin Corp.*, 313 F.3d 1307, 1315 (11th Cir. 2002) (finding that it was not an abuse of discretion for the district court to deny leave to amend the complaint when the motion for leave to amend was designed to avoid an impending adverse summary judgment).

The Motion for Leave is nothing more than another attempt to delay an adverse ruling on the Defendants' anticipated motions to dismiss, and to evade enforcement of the adverse rulings from the Superior Court. As noted, Plaintiffs owe the Defendants here millions in money judgments rendered by the Superior Court, and Plaintiffs filed this lawsuit, as well as an "emergency motion" for a permanent injunction on all D.C. proceedings, to avoid having to pay those judgments – at the very time that Plaintiffs have appealed those judgments in the D.C. Court of Appeals, and asked the Court of Appeals to stay that action. *See* ECF Nos. 33-6, 37. Additionally, Plaintiffs filed the Motion for Leave after most of the Defendants indicated they would ask the Court to permit the filing of motions to dismiss in this Court – clearly an effort to forestall this Court's consideration of those motions. *See* ECF Nos. 17, 24, 25. Indeed, in their response to AU Defendants' Request, Plaintiff argued it "is clearly out of order because there is a Second Amended Complaint ('SAC') pending with the Court" – blatantly attempting to kick down the road any briefing or ruling on a dispositive motion. *See* ECF No. 38.

The Motion for Leave, filed in bad faith and to delay resolution of this case and enforcement of Superior Court judgments, should be denied.

IV.    **Defendants' Motions to Dismiss Should Be Swiftly Adjudicated to Prevent Plaintiffs from Further Abusing the Court System**

Over the years, Plaintiffs have flooded the courthouses in the DMV, including this Court, with frivolous lawsuits like this one.  They have: sued their customers for defamation;[2] named consumer review websites in six different lawsuits (and now this one);[3] and filed fraudulent claims in bankruptcy[4]—all in an effort to distract attention from official investigations and consumer complaints about their shady business practices.

In addition to the people they have harassed through litigation, Plaintiffs have exasperated numerous judges in the region.  Courts have repeatedly found that Plaintiffs manipulate the judicial process, ignore court orders, and lie under oath.  For example:

---

[2] *See Seibert v. Precision Contr. Sols., LP*, 2019 U.S. Dist. LEXIS 194882, at *1 (D.D.C. Nov. 8, 2019) (defamation counterclaim against former customer and his attorney voluntarily dismissed, and fraud claims dismissed for failure to state a claim); *Stephen Sieber v. Hammock*, 2007 CA 001726 B (D.C. Super. Ct. Apr. 10, 2007) (defamation action settled and dismissed without prejudice); *Stephen Sieber v. Mattera*, 2007 CA 002063 B (D.C. Super. Ct. Apr. 10, 2007) (same); *Stephen Sieber v. Poole*, 2007 CA 001725 B (D.C. Super. Ct. Apr. 10, 2007) (same); *Sieber*, 2008 CA 006914 B (naming three former customers in conspiracy and defamation action for making critical statements in online reviews and in ABC news report; dismissed for want of prosecution); *Sieber et al. v. Brownstone Publ'g Co.*, 2009 D.C. Super. LEXIS 10, at **2 n.1, 77-78 (D.C. Super. Ct. Dec. 23, 2009) (noting three customers had previously been dismissed, and granting summary judgment, awarding damages to former customer in breach of contract dispute).

[3] *PCS v. ANGI Homeservices, Inc.*, 415 F. Supp. 3d 113 (D.D.C. 2019) (dismissing conspiracy and tortious interference claims against Angie's List and Home Advisor based on the same conduct alleged in this case); *District of Columbia v. Precision Contracting Solutions, LP et al.*, 2019 CA 005047 B (D.C. Super. Ct. Nov. 15, 2019) (Plaintiffs brought in Angie's List and Home Advisor as counter-defendants for the same claims as this action, then filed voluntary notice of dismissal); *PCS et al. v. Vogel et al.,* 2019 CA 005949 B (D.C. Super. Ct. Sept. 10, 2019) (motion for TRO based on the same alleged conduct as this action, withdrawn on Sept. 17, 2019); *Brownstone Publ'g*, 2009 D.C. Super. LEXIS 10, at **6-14 (conspiracy, libel and tortious interference claims against Angie's List for publishing alert to customers about "serious complaints" against the company, and for not publishing Stephen's response to complaints); *Sieber v. Am. Broad. Co.*, 2008 CA 006914 B (D.C. Super. Ct. Sept. 25, 2008) (alleging Angie's List and its founder defamed Sieber and his company in an ABC *20/20* broadcast).

[4] *In re Stephen Sieber*, CA No. 07-21192-WIL at 12 (Bankr. D. Md. Mar. 29, 2013).

- In an action alleging outrageous conspiracy theories of the same flavor as this action, a California federal court sanctioned another of Stephen Sieber's companies, represented by the same counsel here, because their claims were "objectively baseless."[5]

- In Stephen Sieber's 2013 personal bankruptcy action, the court found he had "improperly manipulated the legal process" and denied relief because "his entire bankruptcy has been a moving target resulting from his inconsistent statements and actions."[6]

- In granting summary judgment against Stephen Sieber and another of his companies, the D.C. Superior Court found that plaintiffs were "totally disrespecting" a ruling, and "openly and defiantly" continued to assert arguments after claims were dismissed.[7]

- In a construction contract suit pending in this Court involving a former customer, Derrick Sieber and PCS moved to compel the customer to permit nonparty Stephen Sieber to participate in on an onsite inspection of the customer's property, forcing the customer to submit "detailed allegations of threats and attempted intimidation by Mr. Sieber a/k/a Stevie Marco." Judge Rosemary Collyer found this established "a reasonable basis to be concerned that a visit by Mr. Sieber to his property could result in further misconduct" and denied their motion.[8]

- Stephen Sieber has repeatedly, and unsuccessfully, attempted to prevent judges from presiding over cases when the rulings did not go his way. *See Sieber v. Lipp*, 466 F. App'x 290 (4th Cir. 2012) (denying request to enjoin federal judges from presiding over any proceedings in which they are involved, and denying motions for reconsideration); *Petito v. Wash. Post Cos.*, 466 F. App'x 191, 192 (4th Cir. 2012) (denying motion to recuse lower court judges).

---

[5] *Song Fi, Inc. v. Google, Inc*., 2016 U.S. Dist. LEXIS 104404, at *7 (N.D. Cal. Aug. 8, 2016). The court granted summary judgment for defendants on the tortious interference claim and awarded defendants costs. *Song Fi, Inc. v. Google Inc*., 2018 U.S. Dist. LEXIS 82015, at *19 (N.D. Cal. May 15, 2018).

[6] *In re Stephen Sieber*, CA No. 07-21192-WIL at 13 (Bankr. D. Md. Mar. 29, 2013) ("The Debtor has improperly manipulated the legal process. The Debtor's failure to fulfill the duties of a debtor in bankruptcy, his failure to be truthful in representing the facts, his failure to seek court authorization to undertake certain actions, and his failure to disclose transactions during the course of his bankruptcy case have resulted in the denial of his discharge.").

[7] *Brownstone Publ'g*, 2009 D.C. Super. LEXIS 10, at **27-*29.

[8] *Seibert v. Precision Contr. Sols., LP*, 2019 U.S. Dist. LEXIS 246216, at *5 (D.D.C. Oct. 30, 2019).

Moreover, throughout the Superior Court proceedings under review in this lawsuit, Plaintiffs harassed and attempted to humiliate the parties and their attorneys. Following AU Defendants' publication of the DCist article, Stephen Sieber left disturbing voicemails for Ms. Delgadillo threatening a defamation lawsuit, and accused Ms. Delgadillo in open court – with no basis whatsoever – of publishing the article because, he falsely claimed, that she had a personal relationship with an OAG attorney. Additionally, during the Superior Court trial on OAG's claims, he sent harassing emails to all attorneys of record, claiming to "[a]lready have the appeals ready to go for" judgments against him, including "the bullshit Anti Slapp judgments of Vogel and AU" and "the dismissed claims of the Precision parties against conman Vogel, soon to be disgraced AU and the disgusting fake journalist Natalie Delgadillo, corrupt AG Racine and lawsuit ridden Angie's List." Ex. 2. Stephen Sieber also stalked OAG counsel during the trial against him for consumer fraud and protection violations, sending threatening emails to the OAG with photos of them coming out of court and insulting the female OAG attorneys' appearances, and promising to "follow all of you everywhere you go until my last breath and make sure any law firm you attempt to work for will conclude there is just no room in a reputable law firm for sewer rats." *See* Ex. 3.[9]

The Motion for Leave is part and parcel of the Siebers' abuse of the judicial system: file motion after frivolous motion, argue that the court cannot rule against them because they have requested the court to provide some other kind of relief, then attack the judges if they rule against them. It is also simply another form of harassment Plaintiffs have launched against Defendants, all of whom have been caught in Plaintiffs' litigation for five years or more. Based on this

---

[9] The initial email included five photos Stephen took stalking them down the street. We include a later version of the email string that does not contain the photos so as not to further propagate Siebers' offensive and creepy behavior.

extensive history, AU Defendants request that the Court deny the Motion for Leave and instruct Plaintiffs that further amendments are impermissible, so that Defendants' Rule 12 motions to dismiss may be briefed and adjudicated.

## CONCLUSION

AU Defendants respectfully request that the Court deny Plaintiffs' Motion for Leave on the grounds that further amendment of this frivolous lawsuit would be futile, and the Motion for Leave is filed in bad faith and with the intent to delay enforcement of the Superior Court judgments against them. AU Defendants further request that the Defendants be permitted to promptly move forward with briefing on Rule 12 motions to dismiss the FAC.

Dated: January 30, 2025            Respectfully submitted,

BALLARD SPAHR LLP

/s/ Charles D. Tobin
Charles D. Tobin (#455593)
Lauren P. Russell (#1697195)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
russelll@ballardspahr.com

*Counsel for American University and Natalie Delgadillo*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of January, 2025, I caused true and correct copies of the foregoing to be served on all counsel of record and on *pro se* Plaintiff Stephen Sieber via the Court's CM/ECF system.

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)