**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

STEPHEN SIEBER, *et al.*,

          *Plaintiffs*,

   v.

DISTRICT OF COLUMBIA, *et al.*,

          *Defendants*.

Civil Action No. 24-cv-03247 (ACR)

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF SUPERIOR COURT DEFENDANTS' MOTION TO DISMISS**</u>

## TABLE OF CONTENTS

INTRODUCTION…………………………………………………………………………1

FACTS………………………………………………………………………………..……1

    **I.**    **The District of Columbia Brings a Successful Consumer Protection Lawsuit Against These Plaintiffs, Which Is Currently on Appeal with the District of Columbia Court of Appeals**…………………………………………………………1

    **II.**    **Plaintiffs' Spurious Claims of Juror Tampering During Deliberations and Request for Security Footage of the Courthouse**……………………………...…..3

    **III.**    **This Lawsuit**…………………………………………………………………5

LEGAL STANDARD………………………………………………………………………6

    **I.**    **Rule 12(b)(1)**………………………………………………………………6

    **II.**    **Rule 12(b)(6)**………………………………………………………………7

ARGUMENT……………………………………………………………………………..7

    **I.**    **The Superior Court Defendants Enjoy Judicial Immunity from Plaintiffs' Claims.**…………………………………………………………………………...7

    **II.**    **Plaintiffs Fail to State a Plausible Claim for Relief Against Any Superior Court Defendant.**………………………………………………………...……12

    **III.**    **Plaintiffs Fail to Establish Subject Matter Jurisdiction for Any Other Potential Claim Against the Superior Court Defendants.**………...…………….....16

        **A.**  **Standing**………………………………………………………………16

        **B.**  **The *Rooker-Feldman* Doctrine**………………………………………18

CONCLUSION………………………………………………………………………19

## TABLE OF AUTHORITIES

*Ananiev v. Freitas*, 37 F. Supp. 3d 297 (D.D.C. 2014) ................................................................ 18

*Ashbourne v. Hansberry*, No. 21-cv-1313 (LLA), 2024 WL 3471243 (D.D.C. July 18, 2024) ... 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................................ 7

*Atherton v. District of Columbia Office of Mayor*, 567 F.3d 672 (D.C. Cir. 2009) ..................... 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................... 7, 16

*Brown v. District of Columbia*, No. 22-cv-3696 (AJB), 2023 WL 7010287 (D.D.C. Sept. 13, 2023) ............................................................................................................................................ 19

*Bush v. Butler*, 521 F. Supp. 2d 63 (D.D.C. 2007) ..................................................................... 9, 16

*Calabi v. Hashemite Kingdom of Jordan*, 543 F.3d 725 (D.C. Cir. 2008) ..................................... 4

*Cause of Action Inst. v. Office of Mgmt. and Budget*, 10 F.4th 849 (D.C. Cir. 2021) ................... 6

*Clapper v. Amnesty Int'l, USA*, 568 U.S. 398 (2013) ..................................................................... 7

*Covad Commc'n Co. v. Bell Atl. Corp.*, 407 F.3d 1220 (D.C. Cir. 2005) ....................................... 2

D.C. Code § 11-1729 ..................................................................................................................... 10

D.C. Code § 11-721 ....................................................................................................................... 13

D.C. Code § 11-906 ....................................................................................................................... 10

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) .................................................................. 17

*Dennis v. Spark*, 449 U.S. 24 (1980) .............................................................................................. 9

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) .................................... 18

*Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) ...................................... 18

*Forrester v. White*, 484 U.S. 219 (1988) .................................................................................... 8, 12

*Green v. United States Dep't of Justice*, 111 F.4th 81 (D.C. Cir. 2024). ..................................... 12

*Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) .................................................................. 15

*Henneghan v. Trafford*, No. 24-cv-489 (CRC), 2024 WL 3471260 (D.D.C. July 18, 2024) ........ 19

*Hill v. Colorado*, 530 U.S. 703 (2000) .......................................................................................... 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ................................................. 6

*Lance v. Dennis*, 546 U.S. 459 (2006) .......................................................................................... 18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................................... 6

*McCall v. District of Columbia*, No. 17-cv-1325 (JEB), 2017 WL 4877289 (D.D.C. Oct. 26, 2017) ............................................................................................................................................ 14

*Mireles v. Waco*, 502 U.S. 9 (1991) ............................................................................................ 8, 10

*Mullis v. U.S. Bankr. Court for Dist. of Nevada*, 828 F.2d 1385 (9th Cir. 1987) .......................... 11

*Ndaba v. Obama*, 697 F. Supp. 2d 75 (D.D.C. 2010) .................................................................. 6, 17

*Neild v. District of Columbia*, 110 F.2d 246 (D.C. Cir. 1940) ..................................................... 14

*Nurriddin v. Bolden*, 818 F.3d 751 (D.C. Cir. 2016) ...................................................................... 7

*Pearson v. United States*, 377 Fed. Appx. 22 (D.C. Cir. 2010) .................................................... 19

*Prince v. District of Columbia*, No. 22-cv-746, 2022 WL 17415058 (D.D.C. Dec. 5, 2022) ...... 15

*Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296 (D.C. Cir. 2014) ............................ 13

*Rubio v. Moss*, No. 24-cv-2872 (ACR), 2025 WL 49910 (D.D.C. Jan. 7, 2025) ........................... 9

*Sindram v. Suda*, 986 F.2d 1459 (D.C. Cir. 1993) ...................................................................... 8, 11

*Stone v. Zipps*, No. 19-cv-1509 (UNA), 2019 WL 2343674 (D.D.C. June 3, 2019) ...................... 9

*Sweigert v. Podesta*, 334 F. Supp. 3d 46 (D.D.C. 2018) ................................................................ 6

*Tripp v. Executive Office of the President*, 200 F.R.D. 140 (D.D.C. 2001) .................................. 15

U.S. CONSTITUTION ........................................................................................................... 6, 14

*Visconti v. Burghardt*, No. 23-cv-3145 (RDM), 2024 WL 3509419 (D.D.C. July 23, 2024) ....... 18

## INTRODUCTION

Upset about litigation that proceeded against them in the Superior Court for the District of Columbia (Superior Court), Plaintiffs Stephen Sieber, *pro se*, and his son, Derrick Sieber, represented by counsel, (together, Plaintiffs) filed this action against Chief Judge of the Superior Court Milton Lee Jr., former Chief Judge of the Superior Court Anita Josey-Herring, Associate Judge for the Superior Court Todd Edelman, Associate Judge for the Superior Court Juliet McKenna,[1] and Chief Security Officer for the Superior Court Thomas Hedgepeth (Superior Court Defendants) and 14 other governmental and non-governmental defendants.  Plaintiffs allege a host of constitutional violations and a civil conspiracy against the Superior Court Defendants, all stemming from actions that occurred during the Superior Court litigation. Plaintiffs' claims against the Superior Court Defendants should be dismissed for three reasons. First, each claim is barred by judicial immunity.  Alternatively, Plaintiffs fail to state a plausible claim for relief.  Finally, any other claims against the Superior Court Defendants should also be dismissed for lack of subject matter jurisdiction.

## FACTS

**I.     The District of Columbia Brings a Successful Consumer Protection Lawsuit Against These Plaintiffs, Which Is Currently on Appeal with the District of Columbia Court of Appeals**

On July 31, 2019, the Office of the Attorney General for the District of Columbia (OAG), on behalf of the District of Columbia (the District), sued Plaintiffs and Derrick Sieber's home

---

[1]     Following the February 4, 2025 status conference, undersigned counsel sought Plaintiffs' consent to dismiss all Superior Court Defendants, to which Plaintiffs responded that they did not consent.  Undersigned counsel asked for clarification on Plaintiffs' position regarding Judge McKenna specifically, as Plaintiffs' Motion for Leave to File a Second Amended Complaint [27] and the proposed Second Amended Complaint [27-1] dismiss Judge McKenna.  Stephen Sieber responded that he did not consent to dismissing her as a defendant; counsel for Derrick Sieber did not respond.

contracting company, Precision Contracting Solutions, LP (PCS).  Compl. for Inj. and Other Relief, *District of Columbia v. Precision Contracting Solutions, LP*, 2019 CA 5047 B.[2]  The District alleged that, while marketing and performing home renovation and home improvement services, Plaintiffs and PCS violated the District of Columbia Consumer Protection Procedures Act (CPPA) by, among other things, misrepresenting their qualifications and expertise (and the qualifications and expertise of their staff), performing construction without required permits, using unlicensed workers to complete projects, and harassing and threatening consumers who complained about the quality of the work.  *See id.* ¶¶ 8–9, 12, 15, 22–24, 30–49.

Judge McKenna presided over the Superior Court litigation from December 2021 to May 2023.  *See District of Columbia v. Precision Contracting Solutions, LP*, 2019 CA 5047 B, Assignment Information.  During her time presiding over the case, Judge McKenna struck exhibits from Plaintiffs' exhibit list, First Am. Compl. [6] ¶ 138, quashed a subpoena, *id.* ¶ 143, and sanctioned Plaintiff Stephen Sieber for serving the subpoena, *id.* ¶¶ 152–55.

The case was reassigned to Judge Edelman in May 2023, and he presided over the Superior Court litigation from that point forward.  *See District of Columbia v. Precision Contracting Solutions, LP*, 2019 CA 5047 B, Assignment Information.  According to Plaintiffs, while presiding over the case, Judge Edelman ordered that certain favorable online reviews of Plaintiffs be redacted, FAC ¶¶ 124–25, struck exhibits from Plaintiffs' exhibit list, *id.* ¶ 138, quashed a subpoena served by Plaintiff Stephen Sieber, *id.* ¶ 143, reconsidered a prior judge's ruling to strike some of the District's exhibits and permitted introduction of those exhibits, *id.* ¶ 170, and permitted a District witness to testify about those exhibits while also limiting Plaintiff

---

[2]     When reviewing a motion to dismiss, the Court may take judicial notice of filings in another court.  *See Covad Commc'n Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005).

Stephen Sieber's cross-examination of the witness about the exhibits, *id*. ¶¶ 171–72.  Plaintiffs also allege that Judge Edelman communicated with a U.S. Marshal without Plaintiffs present, *id*. ¶¶ 295–96, "allow[ed] Deputy U.S. Marshals into the jury deliberation area without notifying [Plaintiffs]," *id*. ¶¶ 302, 319, and denied Plaintiffs' request for an evidentiary hearing about communications between the U.S. Marshals and the Court, *id*. ¶¶ 328–29.  In addition, they allege that Judge Edelman required the District, Plaintiffs, and PCS to communicate only in writing and include his chambers on every email.  *Id.* ¶ 343.  And finally, Plaintiffs claim that Judge Edelman "did not request" that Plaintiffs provide jury instructions to him, *id*. ¶ 175, did not give Plaintiffs "meaningful time" to review the jury instructions or verdict form, *id.* ¶ 176, and ultimately gave jury instructions and used a verdict form that Plaintiffs disagreed with, *id*. ¶¶ 179, 208–09, 212, 228.

In May 2024, a District of Columbia jury found Plaintiff and PCS liable for dozens of violations of the CPPA.  *District of Columbia v. Precision Contracting Solutions, LP*, 2019 CA 5047 B, May 29, 2024 Dkt. entry (Jury Verdict Form Filed).  The Court later imposed fines and civil penalties. *See id.* at Dec. 18, 2024 Order.  In January 2025, Plaintiffs noted their appeal to the District of Columbia Court of Appeals.  *See id.* at Jan. 16, 2025 Dkt. entry (Notice of Appeal).

## II.    Plaintiffs' Spurious Claims of Juror Tampering During Deliberations and Request for Security Footage of the Courthouse

The jury trial began on May 13, 2024.  *Id.* at May 13, 2024 Dkt. entry.  After seven days of testimony, the parties rested on May 22, 2024.  *Id.* at May 22, 2024 Dkt. entry.  After court ended that day, Plaintiff Stephen Sieber followed the District's attorneys out of the courthouse and took photographs of them.  FAC ¶ 283.  The jury began deliberating on May 23, 2024. *District of Columbia v. Precision Contracting Solutions, LP*, 2019 CA 5047 B, May 23, 2024

3

Dkt. entry.  On May 24, 2024, after court ended for the day, Plaintiff Stephen Sieber again followed the District's attorneys out of the courthouse and took photographs of them.  FAC ¶ 283.  He then created caricatures of the attorneys for a "press release" and sent the caricature images to the District's attorneys "for review."  *Id*. ¶¶ 284–85.

On May 28, 2024, with the jury still deliberating, the District, concerned that Plaintiff Stephen Sieber would engage in similar conduct with respect to jurors in the case, moved to prohibit any party from contacting the jurors, except in limited circumstances.  *Id*. ¶ 287; *District of Columbia v. Precision Contracting Solutions, LP*, 2019 CA 5047 B, The District of Columbia's Emergency Motion for an Order Preventing Juror Contact Except in Limited Circumstances.  That same day, Plaintiff Derrick Sieber saw an OAG attorney and a U.S. Marshal speaking to each other in the courtroom.  *Id*. ¶ 286.  About two hours later, Plaintiff Stephen Sieber saw the U.S. Marshal speaking with the courtroom clerk.  *Id*. ¶ 294.  Plaintiffs' version of these conversation is that the District "order[ed] . . . U.S. Marshals into the jury deliberation area where communications between jurors and the . . . U.S. Marshals ensued[,]" and that the Court condoned it.[3]  *Id*. ¶¶ 291, 302.

Expecting that recordings would "prove [their] jury tampering claims" and that *ex parte* communications occurred, Plaintiffs sought the audio and video recordings of the conversations Plaintiffs observed.  *Id*. ¶ 346.  "[I]n conformance with Court procedures[,] to obtain the [W]ebex video and audio tapes[,]" Plaintiffs "formal[ly] request[ed]" the recordings from then-Chief Judge Josey-Herring.  *Id*. ¶ 347.  Judge Josey-Herring provided a portion of the requested audio

---

[3]    Even though, for the purposes of a motion to dismiss, Plaintiffs' allegations "must be taken as true," *Calabi v. Hashemite Kingdom of Jordan*, 543 F.3d 725, 726 (D.C. Cir. 2008), the Superior Court Defendants note that Plaintiffs' inflammatory claims about what occurred during jury deliberations with the U.S. Marshals have been thoroughly debunked.  *See, e.g.*, *District of Columbia v. Precision Contracting Solutions, LP*, 2019 CA 5047 B, Oct. 3, 2024 Order.

recordings (which Plaintiffs now allege must have been "altered"), but she provided no video recordings. *Id*. ¶¶ 349–50. Chief Judge Lee began his term as Chief Judge on October 1, 2024. *Id*. ¶ 358. Plaintiff Stephen Sieber then "began sending emails to [him] demanding the audio and video tapes that recorded activity in the courtroom as well as in the chambers and jury deliberation areas where the alleged jury tampering took place." *Id*. Judge Lee did not respond. *Id.* ¶ 359.

Separately, Plaintiffs emailed Chief Security Officer Hedgepeth requesting the recordings from the courtroom as well as audio and video recordings of "the Moultrie Courthouse and the areas of Judge Edelman's chambers, the jury deliberation room, and the location where U.S. Marshals congregated in this matter on the days of May 28 and 29, 2024." *Id*. ¶ 353. In response, Mr. Hedgepeth first directed inquiries about recordings within the courtroom to one of the Superior Court's lawyers. *Id*. ¶ 354. He then explained that security footage for other areas of the building was subject to a 30-day retention period, and, if the videos were not archived before then, they would no longer be available. *Id*. He explained that, because Plaintiffs' request was not submitted to him within the 30-day retention period, the videos would not be available. *Id*. Plaintiffs, meanwhile, claim to have been in contact with that Superior Court lawyer "for months" before communicating with Mr. Hedgepeth, and the lawyer—aware of Plaintiffs' request for recordings—reported to Plaintiffs that the recordings were available, which was different than Mr. Hedgepeth's response. *Id*. ¶¶ 355–56. Plaintiffs contend this amounts to a civil conspiracy to violate Plaintiffs' rights. *Id*. ¶ 436.

### III.  **This Lawsuit**

On November 18, 2024, Plaintiffs filed this case against the Superior Court Defendants and numerous other governmental and non-governmental actors whom Plaintiffs allege violated

their constitutional rights throughout the Superior Court litigation.  *See generally* Compl. [1].

On December 9, 2024, Plaintiffs filed their First Amended Complaint.  *See generally* FAC.

Plaintiffs allege that the Superior Court Defendants are liable under 42 U.S.C. § 1983 for

violations of their First, Fifth, Seventh, and Fourteenth Amendment rights.  *Id.* ¶¶ 363–98, 410–

18, 430–35.  They also allege Judge McKenna violated their Eighth Amendment rights.  *Id.* ¶¶

419–426.  Finally, Plaintiffs claim that the Superior Court Defendants engaged in a civil

conspiracy to violate their rights.  *Id.* ¶ 436.

## LEGAL STANDARD

### I.    Rule 12(b)(1)

"Subject matter jurisdiction concerns a court's power to hear a case."  *Cause of Action*

*Inst. v. Office of Mgmt. and Budget*, 10 F.4th 849, 853 (D.C. Cir. 2021) (quotation marks

omitted).  "Federal courts are courts of limited jurisdiction[;] [t]hey possess only that power

authorized by the Constitution and statute[.]"  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511

U.S. 375, 377 (1994).  "It is to be presumed that a cause lies outside this limited jurisdiction[.]"

*Id.*  "Article III of the Constitution limits the jurisdiction of federal courts to cases or

controversies."  *Ndaba v. Obama*, 697 F. Supp. 2d 75, 76–77 (D.D.C. 2010) (citing U.S. Const.

art. III, § 2, cl. 1).  "A party has standing to bring suit under Article III of the Constitution only

when []he has suffered an injury in fact—that is, an injury which is concrete, particularized, and

actual or imminent—which is traceable to defendant's actions and redressable by the relief

sought."  *Sweigert v. Podesta*, 334 F. Supp. 3d 46, 52 (D.D.C. 2018) (citations omitted).  The

party invoking federal jurisdiction bears the burden to demonstrate that the Court has subject

matter jurisdiction.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *see also*

*Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 414 n.5 (2013) ("[P]laintiffs bear the burden of pleading . . . concrete facts showing that the defendant[s'] actual action" caused the harm.).

## II.    <u>Rule 12(b)(6)</u>

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Twombly*, 550 U.S. at 555 (internal citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. A plaintiff must offer more than "labels and conclusions" in his complaint, and a "formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (citations omitted). In deciding a motion under Rule 12(b)(6), a court must "assume the truth of all well-pleaded factual allegations and construe reasonable inferences from those allegations in a plaintiff's favor." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (citation omitted). The court need not "'accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint.'" *Id.* (internal brackets omitted) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

## ARGUMENT

## I.    <u>The Superior Court Defendants Enjoy Judicial Immunity from Plaintiffs' Claims.</u>

Plaintiffs seek damages against the Superior Court Defendants for alleged misconduct during the Superior Court litigation, but each of these claims is barred by judicial immunity. "Judges enjoy absolute judicial immunity from suits for money damages for all actions taken in

the judge's judicial capacity, unless these actions are taken in the complete absence of all jurisdiction." *Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir. 1993) (citing *Mireles v. Waco*, 502 U.S. 9, 11 (1991)).  "[W]hether an act by a judge is a 'judicial' one relates to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity."  *Mireles*, 502 U.S. at 12 (brackets and additional quotation marks omitted).  Here, Plaintiffs' claims against the Superior Court Defendants are based on either decisions taken during the Superior Court litigation that were not in Plaintiffs' favor, FAC ¶¶ 395, 397, 412–17, 421, 423–25, 435, or an alleged civil conspiracy in which judges and the Chief Security Officer "work[ed] together in concert with a common objective to deprive Plaintiffs of their [constitutional rights]" through the Superior Court litigation, *id.* ¶ 436.  But every action of which Plaintiffs complain is barred by judicial immunity.

Judicial decisions taken during the Superior Court litigation are "paradigmatic judicial acts" protected by absolute immunity.  *Forrester v. White*, 484 U.S. 219, 227 (1988).  Deciding what jury instructions to give, FAC ¶ 395 (Claim Six:  use of "unconstitutional" jury instructions), *id.* ¶ 417 (Claim Eleven:  "creat[ing] a new jury instruction"), deciding what verdict form to use, *id.* ¶ 397 (Claim Seven:  use of "unconstitutional" verdict form), deciding what evidence to permit, *id.* ¶ 412 (Claim Eleven:  striking evidence), *id.* ¶ 413 (Claim Eleven: quashing subpoenas), *id.* ¶ 414 (Claim Eleven:  permitting use of exhibits that had previously been stricken), *id.* ¶ 415 (Claim Eleven:  limiting cross examination), *id.* ¶ 421 (Claim Twelve: quashing subpoenas), issuing orders for sanctions, *id.* ¶ 423–25 (Claim Twelve: imposing "excessive fines" against Plaintiff Stephen Sieber), ruling on request for a jury trial, *id.* ¶ 435 (Claim Fourteen:  denial of a jury trial), and managing trial procedure, *id.* ¶ 416 (Claim Eleven:

limiting parties' time to review proposed jury instructions) are all "plainly judicial functions," so judicial immunity plainly bars these claims. *See Rubio v. Moss*, No. 24-cv-2872 (ACR), 2025 WL 49910, at *2 (D.D.C. Jan. 7, 2025).

A civil conspiracy claim, based on those same "paradigmatic judicial acts," is also barred by judicial immunity. *See*, *e.g.*, *Dennis v. Spark*, 449 U.S. 24, 27 (1980) (noting that judge was entitled to judicial immunity from suit alleging civil conspiracy between judge and private entities after judge issued a challenged injunction); *Stone v. Zipps*, No. 19-cv-1509 (UNA), 2019 WL 2343674, at *2 (D.D.C. June 3, 2019) ("An act does not become any less judicial by virtue of an allegation of malice, corruption[,] or conspiracy."); *Bush v. Butler*, 521 F. Supp. 2d 63, 68 (D.D.C. 2007) ("There can be no recovery under [§ 1985] absent a violation of a substantive federal right.") (internal quotation marks omitted). So, to the extent Plaintiffs claim the judges conspired to violate Plaintiffs' rights through decisions taken during Superior Court litigation, that claim is also barred. *See, e.g.*, FAC ¶ 126 (alleging judge ordering redaction of evidence as part of an "ongoing tortious conspiracy"), *id*. ¶ 138 (same for striking evidence), *id*. ¶¶ 143, 152 (same for quashing witness subpoenas), *id*. ¶ 144 (same for limiting testimony), *id*. ¶ 156 (same of issuing fines against Plaintiff Stephen Sieber), *id*. ¶ 170 (same for permitting use of exhibits that had previously been stricken), *id*. ¶ 209 (same for giving "unconstitutional" jury instructions), *id*. ¶ 282 (same for using improper verdict form), *id*. ¶ 302 (same for "allowing Deputy U.S. Marshals into the jury deliberation area without notifying the Precision Parties"), *id*. ¶ 327 (same for not issuing an order about the District sending a letter to PCS's customers), *id*. ¶ 337 (same for judge not recusing self).

The remainder of Plaintiffs' civil conspiracy claim, as it relates to the Superior Court Defendants, is about alleged "[e]x-parte communications" between U.S. Marshals and Judge

Edelman, *id.* ¶ 296, and the U.S. Marshals "invad[ing]" the jury deliberation area during deliberation, *id.* ¶ 319.[4]  Plaintiffs sought recordings that, they believe, would provide details of conversations between District attorneys and U.S. Marshals and U.S. Marshals and courtroom staff, *id.* ¶¶ 286, 294, would show video footage of the courtroom, "the areas of Judge Edelman's chambers, the jury deliberation room, and the location where U.S. Marshals congregated in this matter[,]" *id.* ¶ 353, and which would reveal wrongdoing by multiple Defendants, *id.* ¶ 351. Plaintiffs allege misconduct by the Chief Judges for providing only part of the requested footage, *id.* ¶¶ 349, 351, and not responding to follow-up requests for recordings, *id.* ¶¶ 358, 360.  They allege misconduct by the Chief Security Officer for providing Plaintiffs with different information about the availability of the recordings than that provided by another courthouse representative.  *Id.* ¶¶ 354–56.  Taken together, Plaintiffs claim the Chief Judges and Chief Security Officer obstructed justice as part of the tortious conspiracy.  *Id.* ¶¶ 351, 356.

These acts are also protected by judicial immunity.  Managing the release of recordings of proceedings is squarely within the duties of the Chief Judge of the Superior Court.  *See* D.C. Code § 11-906 ("The chief judge shall administer and superintend the business of the Superior Court[.]"); FAC ¶ 347 (requesting recordings to Chief Judge "in conformance with Court procedures").  Therefore, the Chief Judges' decision to disclose only limited footage to Plaintiffs is protected by judicial immunity.  *See Mireles*, 502 U.S. at 12–13 (finding that a judge's

---

[4]    Plaintiffs allege that "[e]x[] parte communications occurred when OAG, being a party in [the Superior Court litigation], ordered [a United States Marshal] to inform Judge Edelman's courtroom clerk . . . and Judge Edelman . . . that [the U.S. Marshals] would be escorting jurors from the building to protect them from [Plaintiffs and PCS], without any notification to [Plaintiffs and PCS]."  FAC ¶ 296.  Plaintiffs are mistaken about either what an "ex parte communication" is or that the U.S. Marshals Service is not part of the District of Columbia Office of the Attorney General, or both.  *See, e.g.*, 28 U.S.C. § 561 (U.S. Marshals Service is under the U.S. Attorney General); D.C. Code § 11-1729 (same); *Ex parte*, Black's Law Dictionary, 2nd Ed., *available at* https://thelawdictionary.org/ex-parte/.

direction to court officers to bring a person in the courthouse before him is protected by judicial immunity).  Moreover, judicial immunity protects not only judges, but also "auxiliary court personnel that are 'basic and integral part[s] of the judicial function.'"  *Sindram*, 986 F.2d at 1461 (quoting *Mullis v. U.S. Bankr. Court for Dist. of Nevada*, 828 F.2d 1385, 1390 (9th Cir. 1987)).  And so, the Chief Security Officer's actions in corresponding about the requested footage, FAC ¶¶ 346, 353–54, are also protected by judicial immunity, *see Sindram*, 986 F.2d at 1461 (holding clerks who assisted in preparing and disseminating judicial order entitled to judicial immunity).  As a result, the Superior Court Defendants are entitled to judicial immunity on all of Plaintiffs' claims against them, and they should be dismissed from this case.

Plaintiffs' actions against the Superior Court Defendants underscore the purpose of judicial immunity.  Plaintiffs suffered losses in the Superior Court litigation, *see, e.g.*, *District of Columbia v. Precision Contracting Solutions, LP*, 2019 CA 5047 B, June 25, 2020 Order (granting District's motion to dismiss Plaintiffs' and PCS's counterclaims and other parties' motions to dismiss), *id.* at Mar. 4, 2022 Order (granting in part District's motion for summary judgment and denying Plaintiffs' motion for summary judgment), and, as the litigation unfolded, Plaintiff Stephen Sieber acted out:  he threatened to sue Superior Court judges to get his way, *see* FAC ¶ 360 (threatening to sue Chief Judge Lee if Plaintiff did not receive response regarding audio and video recordings); *see also* FAC Attachment 6-2 at *21 (threatening to file suit), threatened to "go[] to the media," *id.*, threatened to "get[] the . . . FBI involved asking [the FBI] to undertake a full[-]blown investigation," *id.* at *34, and threatened to seek sanctions against Chief Judge Josey-Herring, *id.* at *35.  Ultimately, judgments were entered against Plaintiffs— $2,200,235.39 against Plaintiffs and PCS, collectively; $629,128.85 against Plaintiff Derrick Sieber and PCS, collectively; and $138,000 against Plaintiff Stephen Sieber, individually.

*District of Columbia v. Precision Contracting Solutions, LP*, 2019 CA 5047 B, Dec. 18, 2024 Order at 43. Now, Plaintiffs sue four judges and the Chief Security Officer of the Superior Court based on what took place during that Superior Court litigation. Their claims against the Superior Court Defendants (if not other Defendants as well) are meritless, yet these parties still must defend against the claims and respond to Plaintiffs' numerous filings. This case is plainly a "vexatious action[] prosecuted by disgruntled litigants." *Forrester*, 484 U.S. at 225. The Court should therefore grant the Superior Court Defendants judicial immunity to prevent Plaintiffs from further wasting this Court's and the Superior Court Defendants' resources, protect judicial independence, ensure the finality of judgments, and discourage inappropriate collateral attacks. *Id*.

## II.   <u>Plaintiffs Fail to State a Plausible Claim for Relief Against Any Superior Court Defendant.</u>

Plaintiffs allege Superior Court Defendants violated their First, Fifth, Seventh, Eighth, and Fourteenth Amendment rights, and that these violations were part of a conspiracy among Defendants. FAC ¶¶ 395–98, 410–26, 436. Plaintiffs fail to state either a plausible constitutional or conspiracy claim against any Superior Court Defendant. To begin, Plaintiffs allege that Judge Edelman's requirement that parties communicate only in writing and include his chambers on all emails, *id*. ¶ 343, acted as an unconstitutional prior restraint on their First Amendment rights. *Id*. ¶ 343.[5] Not so. Prior restraint means a party must obtain prior governmental approval before a person may lawfully speak. *See Green v. United States Dep't of Justice*, 111 F.4th 81, 102 (D.C. Cir. 2024). Here, the court simply required simultaneous notification of the parties' communications, which does not implicate the First Amendment. *See Hill v. Colorado*, 530 U.S.

---

[5]     Plaintiffs allege Judge Park also violated their constitutional rights, *see* FAC ¶ 136, but Plaintiffs did not name Judge Park as a Defendant in the First Amended Complaint.

703, 734 (2000) (finding no prior restraint where "absolutely no channel of communication is foreclosed").

Plaintiffs allege that their Fifth Amendment right to procedural due process was violated by adverse decisions taken during the Superior Court litigation. *See, e.g.*, FAC ¶ 395 (court giving "unconstitutional" jury instructions), *id*. ¶ 397 (using an "unconstitutional" verdict form), *id*. ¶ 412 (striking exhibits), *id*. ¶ 413 (quashing subpoenas), *id*. ¶ 414 (permitting use of exhibits that had been previously stricken), *id*. ¶ 415 (limiting cross-examination), *id*. ¶ 416 (limiting time to review jury instructions and verdict form), *id*. ¶ 417 (giving a jury instruction Plaintiffs did not agree with).  Plaintiffs again fail to plead facts to plausibly allege a constitutional violation.  "A procedural due process violation occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections."  *Atherton v. District of Columbia Office of Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009).  Here, Plaintiffs fail to assert any constitutionally-protected interest of which they have been deprived.  *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014) (citations omitted) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'").  But also, with respect to each action that forms the basis of their Fifth Amendment claim—actions occurring during Superior Court proceedings—Plaintiffs fail to explain how they were denied sufficient process of law.  And they fail to explain why the appellate process by which they could challenge adverse trial court decisions (and where their appeal of the Superior Court judgment and multiple orders is pending) is procedurally deficient.  *See* D.C. Code § 11-721(a) (conferring jurisdiction of appeals from final orders and judgments of the Superior Court on the District of Columbia Court of Appeals).

Plaintiffs' Seventh Amendment claim fares no better.  FAC ¶¶ 430–35.  Plaintiffs fail to explain how they were deprived of a jury trial under the Seventh Amendment, U.S. Const. § 7 (right to a jury trial in certain civil cases), especially given that the facts say the opposite—that the case proceeded before a jury and the jury returned the verdict.  *See, e.g.*, FAC ¶ 320 (jury returned the verdict).  And Plaintiffs cannot state an Eighth Amendment claim, *id.* ¶ 423, because that Amendment applies only to those convicted of a crime, and there is no allegation that Plaintiffs had been convicted of any crime.  *See Ingraham v. Wright*, 430 U.S. 651, 664 (1977); *Robinson v. Pilgram*, No. 22-5001, 2022 WL 3009621 (per curiam), at *1 (D.C. Cir. July 28, 2022) (quoting *Ingraham*, 430 U.S. at 671 n.40) ("Appellant cannot assert an Eighth Amendment claim based on alleged mistreatment by law enforcement officers prior to any 'formal adjudication of guilt.'").  Lastly, "[q]uite simply, '[t]he Fourteenth Amendment is not applicable in the District of Columbia.'"  *McCall v. District of Columbia*, No. 17-cv-1325 (JEB), 2017 WL 4877289, at *3 (D.D.C. Oct. 26, 2017) (quoting *Neild v. District of Columbia*, 110 F.2d 246, 256 (D.C. Cir. 1940)).

Finally, Plaintiffs claim that decisions taken by judges during the Superior Court litigation and the Chief Judges' and Chief Security Officer's response to requests for audio and video footage were part of a tortious conspiracy also fails.  *See* FAC ¶ 126 (judge ordering redaction of evidence as part of an "ongoing tortious conspiracy"), *id.* ¶ 138 (same for striking evidence), *id.* ¶¶ 143, 152 (same for quashing witness subpoenas), *id.* ¶ 144 (same for limiting testimony), *id.* ¶ 156 (same of issuing fines against Plaintiff Stephen Sieber), *id.* ¶ 170 (same for permitting use of exhibits that had previously been stricken), *id.* ¶ 209 (same for giving "unconstitutional" jury instructions), *id.* ¶ 282 (same for using improper verdict form), *id.* ¶ 302 (same for "allowing Deputy U.S. Marshals into the jury deliberation area without notifying the

Precision Parties"), *id.* ¶ 327 (same for not issuing an order about the District sending a letter to PCS's customers), *id.* ¶ 337 (same for judge not recusing self), *id.* ¶ 356 (Chief Security Officer responding to Plaintiffs' email part of a "tortious conspiracy").  To sufficiently plead a civil conspiracy, Plaintiffs must allege facts that "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983).

Plaintiffs' conspiracy claim fails on multiple fronts.  First, under the intracorporate conspiracy doctrine, "two or more individuals within the same legal entity cannot form a legal conspiracy[.]" *Tripp v. Executive Office of the President*, 200 F.R.D. 140, 151 (D.D.C. 2001).  In other words, as a matter of law, the Superior Court cannot conspire with itself.  Additionally, Plaintiffs fail to plead facts that would show an agreement between any Superior Court Defendant and any other individual—no "events, conversations, or documents indicating that there was ever an agreement or meeting of the minds between any of the defendants." *Ashbourne v. Hansberry*, No. 21-cv-1313 (LLA), 2024 WL 3471243, *7 (D.D.C. July 18, 2024) (quoting *Prince v. District of Columbia*, No. 22-cv-746, 2022 WL 17415058, at *4 (D.D.C. Dec. 5, 2022)), *aff'd*, No. 22-7165, 2023 WL 6938135 (D.C. Cir. Oct. 19, 2023)); *see also Kenley v. District of Columbia*, 83 F. Supp. 3d 20, 30–31 (D.D.C. 2015) (internal quotation marks omitted) ("Courts have . . . dismissed conspiracy claims where, for example, plaintiffs simply alleged that defendants had agreed or conspired to violate their rights but did not provide a description of the persons involved in the agreement, the nature of the agreement, what particular actions were taken to form the conspiracy, or what overt acts were taken in furtherance of the conspiracy.").

To the extent Plaintiffs suggest that any Superior Court Defendant communicated with any other Defendant, *see, e.g.*, FAC ¶ 341 (alleging "ex-parte communications"), this, without more, remains insufficient. "Merely alleging that the defendant officials communicated, without alleging any details of those communications that suggest an unlawful agreement, cannot justify inferring the requisite agreement for a [civil rights] conspiracy." *Black Lives Matter D.C. v. Trump*, 544 F. Supp. 3d 15, 39 (D.D.C. 2021). Without more, the facts alleged "stop[] short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 545–46; *see also Bush*, 521 F. Supp. 2d at 68–69 (finding that, where plaintiff "merely concludes that there was an agreement among the defendants to deprive him [of rights,]" he has "failed to plead sufficient facts from which the Court could infer the existence of a conspiracy between the defendants"). Finally, "[a] claim for civil conspiracy. . . fails unless the elements of the underlying tort are satisfied[,]" *Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009), but Plaintiffs fail to sufficiently plead any constitutional violation by a Superior Court Defendant (or any other Defendant with whom the Superior Court Defendants are alleged to have conspired), *see* Parts I and II. *Cf. Bush*, 521 F. Supp. 2d at 68 (internal quotation marks omitted) ("There can be no recovery under [§ 1985] absent a violation of a substantive federal right.").

**III.    Plaintiffs Fail to Establish Subject Matter Jurisdiction for Any Other Potential Claim Against the Superior Court Defendants.**

### A.    Standing

Plaintiffs levy facial challenges to portions of the District of Columbia Consumer Protection Procedures Act against "All Defendants," *see* FAC Claims One through Five, and they allege violations of their constitutional rights against "All Defendants" based on "unconstitutional" jury instructions and the verdict form, and denial of "due process" and a fair

jury trial, *see id*. at Claims Six, Seven, Eleven, and Fourteen.  But Plaintiffs must first establish

that they have standing to bring these claims.  *Crow Creek Sioux Tribe v. Brownlee*, 331 F.3d

912, 915 (D.C. Cir. 2003) ("Standing is one of the essential prerequisites to jurisdiction under

Article III."); *see also Ndaba*, 697 F. Supp. 2d at 77 (plaintiff bears burden of establishing

standing).  They fail to do so.

      At the motion to dismiss stage, Plaintiffs must plead "general factual allegations"

demonstrating that they have standing.  *Lujan*, 504 U.S. at 561. Courts employ a three-pronged

test to determine whether a plaintiff has demonstrated standing:

> First, the plaintiff must have suffered an injury in fact, defined as a
> harm that is concrete and actual or imminent, not conjectural or
> hypothetical.  Second, the injury must be fairly traceable to the
> governmental conduct alleged.  Finally, it must be likely that the
> relief requested will redress the alleged injury.

*Ndaba*, 697 F. Supp. 2d at 77 (internal citations omitted).  Plaintiffs fail to meet the standing

requirements because, for each of these claims raised, they do not allege any injury "fairly

traceable" to each Superior Court Defendant, nor that the requested relief will redress the injury.

*See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[A] plaintiff must demonstrate

standing for each claim he seeks to press.").  Plaintiffs fail to show, for example, how their facial

challenges to the CPPA are traceable to the conduct of any Superior Court Defendant.  Or how

the Chief Security Officer is in any way responsible for the jury instructions or verdict form.

And no conceivable injury is redressable by an order from this Court directed at any Superior

Court Defendant, as opposed to an order from the D.C. Court of Appeals.  The First Amended

Complaint fails to demonstrate that Plaintiffs have standing to sue the Superior Court

Defendants, and the Court should dismiss Plaintiffs' claims against them for lack of subject

matter jurisdiction.

### B.    The *Rooker-Feldman* Doctrine

As described previously, Plaintiffs claim many of the decisions taken during the Superior

Court litigation were unconstitutional.  *See* FAC Claims Six, Seven, Eleven, Twelve, and

Fourteen.  But the *Rooker-Feldman* doctrine bars Plaintiffs from relitigating those decisions

before this Court.  "The *Rooker-Feldman* doctrine prevents the lower federal courts from

exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court

judgments rendered before the district court proceedings commenced.'"  *Lance v. Dennis*, 546

U.S. 459, 460 (2006) (quoting *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280,

284 (2005)).  The doctrine also bars federal district courts from reviewing issues "inextricably

intertwined" with a state court's order.  *District of Columbia Court of Appeals v. Feldman*, 460

U.S. 462, 483 n.16 (1983).  A "federal claim is inextricably intertwined with the state court

judgment if the federal claim succeeds only to the extent that the state court wrongly decided the

issues before it."  *Ananiev v. Freitas*, 37 F. Supp. 3d 297, 312 (D.D.C. 2014), *aff'd* No. 587 F.

App'x 661 (D.C. Cir. 2014).

Here, Plaintiffs allege multiple "wrongly-decided issues" from proceedings in the

Superior Court, including that the jury instructions given were unconstitutional, FAC ¶ 395, that

the verdict form was unconstitutional, *id*. ¶ 397, that Superior Court judges wrongfully struck,

limited, or otherwise prevented use of evidence Plaintiffs sought to admit at trial, *id*. ¶¶ 412–15,

that the sanctions ordered against Plaintiff Stephen Sieber were improper, *id*. ¶ 423, and that a

judge's courtroom management was improper, *id*. ¶¶ 416, 418.  These claims are nothing more

than a thinly-veiled effort to undermine unfavorable decisions from the Superior Court litigation,

and this Court lacks jurisdiction to review them.  *See, e.g.*, *Visconti v. Burghardt*, No. 23-cv-3145

(RDM), 2024 WL 3509419, at *5–6 (D.D.C. July 23, 2024) (explaining *Rooker-Feldman* bars

review of proceedings before state court judge); *Henneghan v. Trafford*, No. 24-cv-489 (CRC), 2024 WL 3471260, at *2–3 (D.D.C. July 18, 2024) ("While the Court recognizes that [plaintiff] continues to dispute the Superior Court's determinations, it lacks jurisdiction to review them."); *Brown v. District of Columbia*, No. 22-cv-3696 (AJB), 2023 WL 7010287, at *6 (D.D.C. Sept. 13, 2023) ("The problem in this case is that at bottom, [plaintiff] is asking this Court to review decisions made by and actions taken in proceedings in the Superior Court . . . , and the federal courts simply lack the power to do that."), *aff'd* No. 23-7129, 2024 WL 1693616 (D.C. Cir. April 18, 2024).  Instead, because "United States district courts do not have authority to review or otherwise interfere with ongoing D.C. Superior Court matters," where a party seeks federal district court review of decisions taken in Superior Court, the matter is properly dismissed for lack of subject matter jurisdiction.  *Pearson v. United States*, 377 Fed. Appx. 22, 22–23 (D.C. Cir. 2010) (internal citations omitted).  This Court should dismiss these claims against the Superior Court Defendants.

## CONCLUSION

For the foregoing reasons, the Superior Court Defendants request that the Court dismiss Plaintiffs' claims as against them.

Date:  March 10, 2025                    Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

*/s/ Chad Copeland*
CHAD COPELAND [982119]
Deputy Attorney General
Civil Litigation Division

*/s/ Blair L. Gilbert*
BLAIR L. GILBERT [155801]
Assistant Attorney General

400 6th Street, NW
Washington, D.C. 20001
(202) 805-7636
blair.gilbert@dc.gov

*Counsel for Judges Milton Lee Jr., Anita Josey-Herring, Todd Edelman, and Juliet McKenna, and Thomas Hedgepeth*